Michael McMahon

v.

The People of the State of Illinois.

*Filed at Ottawa May 12, 1887.*

1. Jury—*disregarding testimony.* While the jury are the judges of the credibility of the witnesses, they have no right arbitrarily to disregard the testimony of a reliable witness.

2. Criminal law—*quantum of evidence to convict.* If, from all the evidence in the case, the jury have a reasonable doubt of the guilt of the accused, the law requires them to acquit.

3. Case stated, and the evidence given, in the trial of one for larceny, which the court finds wholly insufficient to sustain a conviction.

Writ of Error to the Criminal Court of Cook county; the Hon. Elliott Anthony, Judge, presiding.

Mr. W. D. Munhall, for the plaintiff in error:

If the evidence is such as to suspend the judicial mind in serious doubt as to the guilt of the accused, a new trial will be granted. *Marlatt* v. *People,* 104 Ill. 364; *Clark* v. *People,* 111 id. 404; *Mooney* v. *People,* id. 388; *Rafferty* v. *People,* 72 id. 43; *Falk* v. *People,* 42 id. 333.

Mr. George Hunt, Attorney General, and Mr. Julius S. Grinnell, State's Attorney, for the People.

Mr. Justice Craig delivered the opinion of the Court:

This was an indictment against Michael McMahon, for larceny, and on a trial in the Criminal Court of Cook county the defendant was found guilty, and his term of imprisonment in the State prison fixed at eighteen months.

Several errors have been assigned on the record, but the main ground relied upon to reverse the judgment is, that the evidence is not sufficient to sustain the judgment.

The charge against the defendant is, that on a certain day in the month of August, 1886, he stole a suit of clothes from the house of Adam Jaeger, who resided at 701 South Halsted street, Chicago. At the time of the alleged larceny, the defendant was in the employment of Wheeler & Thomas, a firm engaged in the roofing business, being foreman of a gang of five men who were sent to the residence of Adam Jaeger to do a job of work on the house. It is claimed that on leaving the house, after the work was finished, the defendant took and carried away the suit of clothes, wrapped up in an old coat.

The evidence relied upon to sustain the conviction is that of John Hartig, a carpenter, who was at work on the house at the same time. He testified that the men came there to work on the house about two o'clock in the afternoon, and worked about one hour; that he met the defendant and another man coming down stairs at Jaeger's house about three o'clock that day; the other men had gone; the defendant had a big bundle under his arm in an old coat. He further testified that he saw the defendant place the bundle on the seat of a wagon which they had with them, and he and the other man got on the seat of the wagon and drove off. A few minutes after the men had gone, Mrs. Jaeger notified the witness that a suit of clothes belonging to her husband was missing. The witness then went to Mr. Wheeler, the employer of the men, and notified him of what had occurred. Wheeler and the witness went to Chicago avenue, where the men were engaged on another job, and found a bundle containing the suit of clothes on the wagon seat.

To rebut this evidence, the defendant introduced Judson Jones, who, in substance, testified: "I am a roofer, and work for Wheeler & Thomas, and worked for them last August. I was at work with the defendant on the day he did the work at Jaeger's house, on South Halsted street. Besides the defendant and myself, there were three other men working with us,—Charles Linstrum, Fred Frutel and Frank Limberg.

It took us about an hour to do the work. I was with the defendant part of the time. Linstrum and Frutel went down from the roof some time before the defendant and myself. The defendant told me to get his tape-line, which was in his coat pocket. I called to Frank Limberg below to send me Mike's coat. He placed the coat on the bucket by which we hauled up material for roofing. I hauled it up, and took from the pocket on the inside of the coat, the tape-line, and he and I measured the work we had done. After he had taken the measurement, he put the tape-line in the pocket of his coat, and put his coat and vest on his arm, and he and I started down. We went in through the window and attic-room, and down the stairs from the inside of the house. This was the only way down. I was right behind him all the way,—not more than two feet from him all the way. The defendant had nothing, at any time, but his coat and vest. He did not stop from the time he left the roof until we got to the wagon, and he took nothing in his hands, or otherwise, from the time he left the roof, that I know of. I did not see him take anything. He had no bundle except his own coat and vest, when I was with him. When we got to the wagon he placed his coat and vest on the seat, and we got on the wagon and drove away."

The defendant was sworn on his own behalf, and testified that he did not take the suit of clothes, and he gave substantially the same account of what occurred at the house as the witness Jones. It also appeared, from the evidence, that the defendant's coat was found on the wagon seat, but the suit of clothes, when found, was wrapped up in an old coat which did not belong to the defendant, and, so far as is shown, was never in his possession. In addition to the evidence alluded to, the defendant called eight witnesses, who seem to be reliable people, and they all testified that they knew the defendant's reputation for honesty in the neighborhood where he resided, and that it was good.

If the evidence of the witness Jones is reliable, (and we see nothing in the record to cast suspicion on his testimony,) then Hartig, who testified that the defendant took away the clothes, must be mistaken. Jones was in company with the defendant all the time he was at Jaeger's house, and left the house with him. He was in a position to know what the defendant took from the house, and he is positive that the defendant took nothing away with him but his coat and vest. The jury are judges of the credibility of the witnesses, but they have no right arbitrarily to disregard the evidence of a reliable witness, and we can see no theory upon which the jury convicted the defendant, unless they entirely disregarded the evidence of Judson Jones.

If this was a civil case, and we were called upon to pass upon the evidence, we would not hesitate to hold that the evidence preponderated in favor of the defendant. The defendant, who, under the statute, is a competent witness, testified that he did not take the goods. He proved by a reliable witness, who was with him at the time the larceny was alleged to have been committed, that he did not take the goods. He fortified this by showing a good character for honesty. The goods, when found, were not wrapped up in defendant's coat, as claimed by the prosecution, but in the coat of some one else. This is the case made by the defendant, while the people meet it by the evidence of one witness that he saw the defendant take the goods. Surely, the weight of the evidence is with the defendant. But this was not the test before the jury. This is a criminal case—one in which the defendant is charged with crime; and the law required the jury, if, from all the evidence in the case, they had a reasonable doubt in regard to the guilt of the accused, to bring in a verdict of not guilty. Applying this rule to the case, we do not perceive any ground upon which the judgment can be sustained.

We are of opinion the verdict was not sustained by the evidence. The judgment will therefore be reversed, and the cause remanded.          *Judgment reversed.*