## DREW *et al* v. WATERTOWN INS. CO.

1.  While it is the right of the jury, in general, to judge of the credibility of a witness and the probative value of his testimony, they have no right, arbitrarily or capriciously to disregard testimony submitted to them by the court.

2.  Where, in a civil action, the instruction of a court to the jury is unchallenged, and its correctness unquestioned, either in the trial court or here, a verdict of the jury in open disregard of such instruction will not be allowed to stand.

(Syllabus by the court.   Opinion filed Dec. 6, 1894.

Appeal from circuit court, Hyde county.   HON. LORING E. Gaffy, Judge.

Action by Anna Drew, as owner, and W. W. McDonald, as mortgagee, against the Watertown Fire Insurance Company to recover on a policy of insurance.   Plaintiffs had judgment, and defendant appeals.   Reversed.

The facts are stated in the opinion.

*D. C. & W. R. Thomas,* for appellant.

· The only evidence of payment of the premium for the policy sued upon was that the alleged agent of the defendant was requested by the agent of the plaintiff to charge up the premium to the plaintiff.   This was insufficient.   Sec. 3456 Comp. Laws; Cedar county v. Jewal, 15 N. W. 569; Greenleaf on Ev. p. 527; Dewell v. Morehouse, 36 How. Pr. 511.  "

A description of the risk in a policy of insurance made by the insured or agent is in itself a warranty.   May on Ins., sec. 93; Sarsfield v. Metropolitan Ins. Co., 42 How. Pr. 97; Blumer v. Phoenix Ins. Co., 45 Wis. 622; Moore v. State Ins. Co., 34 N. W. 183; Ficher v. Crescent 33 Fed. 544.   The use to which

the building was to be put under the policy was a temperance billiard hall; it was in fact used as a whisky saloon. This was a breach of warranty. The plaintiff knew the building and its use and that the use was unlawful. Wood on Ins. sec. 200; Goddard v. Monitor Mut. Ins. Co., 11 Am. 307; Crisman v. State Ins. Co. 18 Pac. 466. In this policy no agent could waive a condition and this fact was known to the insured and a waiver is not tenable because there was a limitation in the policy, and this the insured knew. Silverberg v. Phoenex Ins. Co., 7 Pac. 38; Enoe v. Sun Ins. Co., 8 Pac. 379; Corey v. German Amer. Ins. Co., 54 N. W. 18; Clevenger v. Ins. Co. 2 Dak, 114; Cleave v. Ins. Co., 32 N. W. 660.

*Crawford & DeLand,* for respondent.

The insufficiency of the evidence to sustain the verdict cannot be considered in the appellate court under general and indefinite assignments of error. Ormsby v. Courad, 57 N. W. 778; 4 S. D. 599; Kent v. Ins. Co., 2 S. D. 300; State v. Chapman 1 S. D. 414; Pickert v. Rugg, 1 N. D. 230. The delivery of the policy to the insured by the agent raises a presumption of payment or the extension of credit for the premium. Bochen v. Suc. Co., 55 N. Y. 131; Smith v. Ins. Co , 3 Dak. 30; Bromfield v. Ins. Co., 35 Mo. App. 54; Farnum v. Ins. Co., 23 Pac. 369; Appleton Ins. Co. v. Assurancy Co., 46 Wis. 35; Home v. Amy 5 S. Rep. 143; N. Y. Life v. Stone, 42 Mo. app: 383.

When there are too many plaintiffs before the court a dismissal can be made as to unnecessary plaintiffs. Pom. Rem. & Rem Rights Sec. 209; Ross v. Waite, 4 S. D. 584.

An insurance company cannot avoid its liability for a loss under a policy on the ground that the building was unlawfully used when its agent who issued the policy lived near the property and knew the uses to which it was put. Springfield F. M. Ins. Co. v. McLewians, 45 N. W. 171; Nebraska Ins. Co. v. Christinance, 45 Id. 924. A clause avoiding a policy in case of incumbrance is waived if the agent issuing it knows of the incumbrance. Bortless v. Fireman's Ins. Co., 41 N. W. 601;

Butts v. Ohio Ins. Co., 42 N. W. 1119. The breach of any condition in a policy is waived after being brought home to the company and not being taken advantage of. Cloonr v. Ins. Co., 40 Wis. 453; Cotton v. Fidelity, 41 Fed. 506; King v. Ger. Ins. Co., 23 Atl. 572. In case of doubt a statement made by the insured as to the property will be construed to be merely a representation and not a warranty. Campbell v. New England, 98 Mass. 381; 11 Am. & Eng. Ency. Law 294; Kentucky Mut. Ins. Co. v. Southaid, 8 B. Monroe 634.

The materiality of a misrepresentation is a question for the jury. Sweet v. Ins. Co., 8 Atl. 457; Ins. Co. v. Rodgers, 10 N. E. 242.

Only in cases when the warranty is expressed and so clear that its meaning cannot be misunderstood will a breach of an immaterial condition forfeit the policy. Daniels v. Ins. Co., 12 Cushing 426; Town v. Fitchberg 7 Allen 51; Westfall v. Ins. Co., 2 Duer 490; Miller v. Association, 31 Ia. 216; Watertown v. Simone 96 Pa. St. 520; Am. Ins. Co. v. Day, 39 N. J. L. 89; Howard v. Cormick, 24 Ill. 344; Woodruff v. Ins. Co., 83 N. Y. 133; Ins. Co. v. Eddy, 55 Ill. 213; Hoffman v. Ins. Co., 32 N. Y. 405; Rann v. Ins. Co., 59 N. Y. 387.

KELLAM, J. This was an action by Anna Drew, as owner, and W. W. McDonald, as mortgagee, to whom the loss was made payable, to recover, under a fire insurance policy, for the value of a building claimed to be insured by said policy and destroyed by fire. Upon a trial before a jury the plaintiff recovered, and the defendant appeals. The company pleaded and relied upon several distinct grounds of defense, only one of which will be particularly noticed.

The policy contained a provision that the same should be void if the premises so insured should be used or occupied for any unlawful purpose without the consent of the company indorsed thereon. On the trial, H. A. Patterson, a witness for

defendant, testified that he was acquainted with the building and premises in question. He further testified: "The building was occupied during the month of March, and particularly on the 8th of March, by John Zwight. I was working for him, tending bar for him, in his employ. During the month of March that year, the building was used for selling drinks. Sold everything mostly that anybody wanted in regard to drinking. Whisky, beer, gin, brandy, was sold there. The same liquors were sold there during the month of April. I was in Zwight's employ nearly two years in the same capacity, and the premises were used in the same manner several months before March. During the months of March and April I was tending bar, and would sell drinks of all kinds. The place was kept open 16 or 18 hours a day, and about six and a half days a week." Frank Drew, son of the assured, acted as the agent of the defendant company in making this insurance. Concerning Socrates Drew, another son, who was shown to be the agent of Anna Drew in effecting this insurance, the same witness testified: "I know Socrates Drew, and have seen him in this building several times. * * * During the time commencing January 1 and ending March 8, 1890, I sold beer in this building to Socrates Drew." F. N. Barnes, the county auditor for Hyde county, in which these premises are situated, testified that no license to sell intoxicating liquors in that county was issued to any one in the years 1889 or 1890. E. G. Fahnestock, the secretary of the defendant company, testified: "If any application for insurance upon a building occupied for a liquor saloon was made to me during 1890, or since that period, I would reject the risk. A one-story frame building situated where the one in this policy was situated during the month of March, 1890, and occupied for a saloon, where intoxicating liquors were sold, would not be ratable at all for insurance." It was shown in the application for insurance upon which this policy was issued it was represented by the assured that the building was used and occupied as a "temperance billiard hall." The court

instructed the jury as follows. "4, The policy provides, among other things, and the insurer and insured warrants, that the premises shall not be used for an unlawful purpose; and that warranty is material, and should you find from the evidence that Frank Drew was the agent of the company, and that the building, at the time of the insurance or at the time of the loss, was used for an unlawful purpose, and that thereby the risk or hazard and liability of loss by fire was increased in any degree, then your verdict must be for the defendant. I further instruct you that at the time of the loss, and at the time of the execution of this policy, and for the purpose of this suit, the sale of intoxicating liquors as a beverage would subject the premises to an unlawful use, under the laws of this state as they existed at that time."

No exception to this instruction was taken, and it went to the jury, and controlled them as the law of the case. Under such conditions they could no more disregard the law as given them by the court than they could the evidence as given by the witnesses. Emerson v. Santa Clara Co., 40 Cal. 543. Respondent makes no claim that the law was incorrectly stated by the court, but insists that the charge was correct. Possibly, but upon this point we express no opinion. If the instructions were shown to be wrong in law, and the verdict right upon the evidence, it might stand; but with this evidence before them, and its legal effect fixed as it was by the unchallenged charge of the court, their verdict could not be justified. In his brief, respondent says: "The jury had the right to discredit the witness Patterson and his testimony concerning the sale of intoxicating liquors in the building covered by the policy. It was within the province of the jury to believe or disbelieve this testimony. * * *" This right, conceded, would lack little of making the jury judicially omnipotent, for what the jury may rightfully do the court may not rightfully undo. While courts are, and ought to be; careful not to invade the province or abridge the right of the jury to determine questions of fact, yet

the jury has little to do where there is no question of fact in dispute upon the evidence, or upon the inferences which they are at liberty to deduce therefrom; but a jury is not at liberty to arbitrarily, and without reason, reject or discredit the testimony of a witness. A jury is entitled to wide latitude in passing upon the credibility of witnessess, but its power is not unlimited. The testimony of this witness was not at all improbable in itself. The fact to which he testified was not disputed It was of such a character that, if untrue, it could have been easily disproved. He was not shown to be in any manner interested. Under such circumstances there was nothing upon which the jury could reasonably base a rejection of his testimony. In Lomer v. Meeker, 25 N. Y. 361, where this question was the controlling one, the court said: "The judge in this case should, therefore, have nonsuited the plaintiff, or dismissed the complaint, which is equivalent to a nonsuit. The argument is that this could not properly be done, because there was a question of credibility raised in respect to the witness Bock, who proved the usury. But this objection is untenable. The witness was not impeached or contradicted. His testimony is direct and positive, and not incredible upon its face. It was the duty of the court and jury to give credit to his testimony. The positive testimony of an unimpeached, uncontradicted witness cannot be disregarded by court or jury arbitrarily or capriciously. They are bound to believe, for judicial purposes, such testimony, and it would, in an instance like this be the clear duty of the court to set aside the verdict of a jury founded upon a disbelief of clear, uncontradicted, and undisputed evidence." In Newton v. Pope, 1 Cow. 109, the court reversed a judgment because the trial court disregarded postive evidence. In its opinion it used this language: "It is difficult to establish a rule which shall regulate and limit the discretion of a court or jury in the degree of credit to be given to the testimony of different witnesses. Much must depend on the particular circumstances of each case. But there is no dif-

ficulty in saying that where (as in this case) the witness is un-impeached, the facts sworn to by him uncontradicted, either directly or indirectly, by other witnesses, and there is no intrinsic improbability in the relation given by him, neither a court nor a jury can, in the exercise of a sound discretion, disregard his testimony. It is no less the duty of a court than of a jury to decide according to evidence. But it is mockery to talk of evidence if it is discretionary with the tribunal to which it is addressed to disregard it upon the vague suggestion, unsupported by proof, of the bias of the witness." In McMahon ·v. People, 120 Ill. 584, 11 N. E. 883, the court said; "The jury are judges of the credibility of the witnesses, but they have no right arbitrarily to disregard the evidence of a reliable witness." See, also, Elwood v. Telegraph Co., 45 N. Y. 553; Dickenson v. Bently (Iowa) 45 N. Y. 903. The uncontradicted testimony, under the law as given to the jury by the court, and conceded by respondent to be right, entitled the defendant to a verdict. The judgment is reversed, and the cause remanded for a new trial. All the judges concurr.