## STUDEBAKER BROS. MANUFACTURING CO. v. ZOLLARS, Sheriff, *et al.*

1. A chattel mortgage given to a relative for a *bona fide* indebtedness is valid as against the judgment creditors of the mortgagor.

2. Where a sheriff justifies his refusal to levy an execution by alleging that the property of the judgment debtor had been previously mort-

gaged for a valuable consideration, the burden is on him to establish the *bona fides* of the mortgage.

3. A jury's finding on conflicting evidence will not be disturbed on appeal.

(Opinion filed December 20, 1899.)

Appeal from circuit court, Custer county. Hon. WILLIAM GARDNER, Judge.

Action by the Studebaker Bros. Manufacturing Company, a corporation, against Lafayette Zollars, as sheriff, and others to recover damages for failure to levy certain executions upon the personal property of certain judgment debtors. Judgment for plaintiff. Defendants appeal. Affirmed.

The facts are stated in the opinion.

*Charles W. Brown* and *Fowler* and *Whitfield,* for appellants.

The courts instructions to the jury relating to the question of the validity or invalidity of the Tyler mortgage were misleading and erroneous because they permit and direct the jury to find the mortgage invalid if given by the mortgagors with fraudulent intent, although such intent was not known to or participated in by the mortgagee. Williams v. Harris, 4 S. D. 22; Bump on Fraud Con. 195-198; 2 Thomp. Trials § 2018; Sock. Inst Jur. 158, 14, 24. They were further erroneous and prejudicial because they gave undue emphasis to the fact of the relationship existing between Tyler and the Overpecks and imported that such relationship was a badge of fraud. Bump. Fraud Con. 56; Bleiler v. Moore, 60 N. W. 793; Mellinger v. Hunt, 62 N. W. 813; Allen v. Kirk, 47 N. W. 906; Laws v. Starr, 1 S. D. 107.

The court instructed the jury. "In this action by reason of the peculiar situation of the facts the burden rests with the defendant to satisfy you of the validity and *bona fides* of the

alleged mortgage of the Overpeck Brothers to their father-in-law Tyler. Ordinarily the burden rests with the plaintiff but upon the contested issue in the case the burden rests with the defendants." This instruction was misleading and erroneous. Hory v Pierron, 30 N. W. 692; James v. Van Duyn, 45 Wis. 512; Kalk v. Fielding, 50 Wis. 339; Semmens v. Walters, 55 Wis. 675; Evans v. Rugee, 57 Wis. 623; Shores v. Doherty, 65 Wis. 153; 2 Thomp. Trials §§ 1938, 1939; Norton v. Kearney, 10 Wis. 443; Ahlman v. Meyer, 19 Neb. 66; Bamburger v. Schoolfield, 160 U. S. 149; Jones v. Simpson, 116, U. S. 609; Gruber v. Baker, 9 L. R. A. 302; Tuteur v. Chase, 4 L. R. A. 832.

The letter from Overpeck Brothers to the plaintiff and the financial statement made by them to the plaintiff, had no tendency to show any fraud on the part of Tyler who had no knowledge of the letter or statement, There was no sufficient evidence to sustain the verdict. Abb. Tr. Ev., p. 740; Cuyler v. McCartney, 40 N. W. 221; Blanchard v. Moors (Mich.) 48 N. W. 543; Neuffer v. Moehn, (Ia.) 65 N. W. 334; Williams v. Simmons, 70 Fed. 41; Treusch v. Crowther, 54 Fed. 667; Shauer v. Alterton, 151 U. S. 607; Drew v. Ins. Co., 6 S. D. 335; 'Bank v. North, 2 S. D. 400; Bates v. Bates, 120 U. S. 756; Fuller v. Elevator Co., 2 N. D. 220; Jransch v. Lewis, 609. When there is no sufficient evidence it is error for the court to refuse to direct a verdict. Schuylkill etc. Co. v. Munsen, 14 Wall. 867; Commissioners v. Clark, 4 Otto 61; Knapp v. Bank, 5 Dak. 394; Pert v. Ins. Co., 1 S. D. 466; Bowman v. Eppinger, 1 N. D. 21; Pirie v. Gillette, 2 N. D. 255; People v. Ins. Co., 2 L. R. A., 340; Hall v. Stevens, 5 L. R. A. 802; 2 Thomp. Tr., §§ 2242, 2243-2250.

*Wood* and *Buell*, for respondents.

Appellants having failed to request an instruction to the jury that if they found a fraudulent intent on the part of the mortgagors to defraud creditors that that intent must have been brought to the knowledge of the mortgagor cannot now be heard to complain. Miller v. Bryan, 3 Ia. 58; Ault. v. Sloan, 4 Ia. 508: Koebler v. Wilson, 40 Ia. 183.

The trial courts' instruction as to the burden of proof was correct. Jewett v. Sundback, 58 N. W. 20. The court instructed the jury that the burden of proof was on the defense; if appellants desired the court to limit or qualify this instruction and charge the jury that in case defendants established certain facts the burden would then shift to the plaintiff, they should have specially requested an explicit instruction to that effect. Louisville & E. St. L. R. R. Co. v. Spencer, 36 N. E 91; Nichol v. Laumeester, 36 Pac. 925; McQuillan v. City of Seattle, 43 Pac. 893; Cogseel v. West St. & N. E. Ry. Co., 31 Pac. 411; Shumard v. Johnson, 17 S. W. 398.

The evidence was sufficient to justify the verdict. Vermillion Well Co. v. Vermillion, 6 S. D. 466; Jeansch v. Lewis, 1 S. D. 609; Waite Fraud Con. § 13; Williams v. Harris, 4 S. D. 26; Shauer v. Alterton, 151 U. S. 607.

CORSON, P. J.    This action was brought by the plaintiff, who was a judgment creditor of Alemeth E. Overpeck and Areli L. Overpeck, co-partners doing business as Overpeck Bros., against Lafayette Zollars, as sheriff of Pennington county, and his sureties, to recover damages for the failure of said Zollars, as sheriff, to levy certain executions in favor of the said plaintiff and against the said Overpeck Brothers upon their personal

property.    The sheriff justified his refusal  in  levying the said executions by alleging, in substance, that the personal property upon which he was directed to levy had been previously mortgaged for a valuable consideration by the said Overpeck Brothers to one Hollis J. Tyler, of the county of Ontario, in the state of New York.    A trial was had before the circuit judge and a jury.    A verdict and a judgment were rendered in favor of the plaintiff  for  $6,682,39, together with costs and disbursements, from which judgment and order denying a  motion for  a  new trial the defendants appeal to this court.

On the trial the defendants introduced evidence tending to show that Hollis J. Tyler had  at  various times during several years prior to 1887 advanced to Overpeck Bros., as loans, sums amounting to about $8,000, and that in  November, 1893, there was due to Tyler from Overpeck Bros., on account of said loans about the last-mentioned sum, and that to  secure said amount the Overpeck Brothers executed and delivered, on the last-mentioned date, to said Tyler, a chattel mortgage upon all the personal  property upon which said Zollars was  directed by  the plaintiff  to  levy its execution; that said chattel mortgage was duly filed for record, and was  a  valid, subsisting, and unsatisfied mortgage at the time he, said Zollars, was directed to levy upon the said property.    The learned court, in  its  charge  to the jury, gave the following instruction:  ''The only remaining question is this:  Was  the mortgage executed by Overpeck Bros. to their father-in-law,  Tyler, a  valid  mortgage  at  the time of the levy of the execution in the case of the  Studebaker Bros. Manufacturing Company  against Overpeck Bros. ?  And likewise you shall find whether or not it was a valid and subsisting mortgage at the date of refusal  of  the sheriff to levy upon

the second execution, there being two judgments in favor of the Studebaker Bros. Manufacturing Company and against Overpeck Bros. The plaintiff relies upon circumstances tend·ing to show the fact, or possible fact, that the mortgage given by the Overpeck Brothers to their father-in-law, Tyler, was not given for a valid and subsisting obligation. I instruct you that upon this you are the sole judges of all the facts before you as to whether or not, as a valid and subsisting debt, it existed at the time of the execution of the Overpeck Brothers' mortgage to Tyler. If said debt existed, they had the right to prefer their father-in-law, or any other creditor, to all other creditors they may have had, if they so desired. If they owed their father-in-law $8,000 at the date of the execution of the mortgage, it is good as against the world and as against this plaintiff. This is the question: Was the mortgage given for a *bona fide*, good-faith indebtedness, or in fraud of other credit-ors? If you find it was given in fraud, it is invalid, and must be so determined in this action. If you find that it was given in good faith, it was a first lien upon this property; and the sheriff had not only the right, but it was his duty, to decline to proceed under the levy, and your verdict will be for the defend-ants." It is contended by the appellants that this instruction is misleading and erroneous, in that it, in effect, permits and directs the jury to find the mortgage invalid if given by the mortgagors with fraudulent intent, although such intent was not participated in or known to the mortgagee. We cannot agree with appellants in their contention. The learned circuit court very properly stated to the jury the question to be de-termined by them as follows: "If said debt existed, they had the right to prefer their father-in-law, or any other creditor, to

all other creditors they may have had, if they so desired. If they owed their father-in-law $8,000 at the date of the execution of the mortgage, it is good as against the world and as against this plaintiff. This is the question: Was the mortgage given for a *bona fide*, good-faith indebtedness, or in fraud of other creditors?" We think the jury must have understood from this instruction that the only question for them to determine was whether or not the mortgage was given for a *bona fide* indebtedness, and that, if it was so given, the mortgage was valid as against all the world. If it was not so given, then it was fraudulent, and in this view of the instruction the court correctly stated the law as applicable to this case. It is quite clear from the whole charge of the court that in using the language, "If you find that this was given in fraud, it is invalid, and must be so determined in this action," it used the word "fraud" in the sense of a want of consideration for the mortgage, and we think the jury must have so understood it. This being so, the court was not required to add the qualification, suggested by counsel, that the mortgagee must participate in the fraud. If it is true, as claimed by respondent, that the mortgage was given without consideration, it was necessarily fraudulent as against the creditors of the Overpecks.

The court gave the following instruction, to which appellants excepted: "In this action, by reason of the peculiar situation of the facts in the case, the burden rests with the defendants to satisfy you of the validity and *bona fides* and good faith of the alleged mortgage of the Overpeck Brothers to their father-in-law, Tyler, Ordinarily, the burden of proof, as you gentlemen presumably understand, rests with the plaintiff, but upon the contested issue in the case the burden rests with the

defendants." We are of the opinion that the foregoing instruc
tion, as applied to this case, was strictly correct. The burden
of proof was upon the defendants to show that at the time the
Overpeck Brothers executed the chattel mortgage to Tyler it
was executed for a good and valuable consideration, and, if the
defendants succeeded in satisfying the jury that the chattel
mortgage was so executed, then the verdict should have been
for the defendants. If, on the other hand, the jury were satis-
fied that the chattel mortgage was given by the Overpecks
without consideration, then it was fraudulent and void as to
the creditors, and the jury should have so found. If the appel-
lants desired the court to limit or qualify this instruction, or to
go further, and charge the jury that, in case defendants estab-
lished these facts, the burden of proof would then shift to the
plaintiff, they should have specially requested an explicit in-
struction to that effect; and by the failure to do so they waived
the objection. Railroad Co. v. Spencer (Ill. Sup.) 36 N. E. 91;
Koehler v. Wilson, 40 Iowa 183; McQuillan v. City of Seattle
(Wash.) 43 Pac. 893.

The appellants also strenuously contend that the verdict
is unsupported by the evidence. They insist that they proved
by uncontradicted evidence that Tyler had advanced, by way
of loans, to the Overpeck Brothers, from about 1883 to 1886,
inclusive, upwards of $8,000, and that there was actually due
Tyler, at the time the chattel mortgage was executed, in Nov-
ember, 1893, about that sum, and that it was not competent for
the jury to disregard this evidence, and find that at the time
this mortgage was executed there was no money actually due
from the Overpecks to Tyler. It is true that Tyler and Areli
Overpeck testified there was due from the Overpecks to Tyler

about the amount stated at the time the chattel mortgage was executed, but it appeared that a statement was made by the Overpeck Brothers to the plantiff in 1887, in which they state their liabilities did not exceed in amount $4,500, and in a letter written by them to the plaintiff in 1892 they make the following statement: "We do not owe but little to anybody but your people." It was not claimed by Tyler that he loaned any money to the Overpecks subsequent to 1885. These statements made by the Overpeck Brothers subsequent to the date of the alleged loans claimed to have been made by Tyler to them were clearly inconsistent and contradictory to the evidence of Areli Overpeck, made on the witness stand, and hence his evidence could have properly been, and probably was, disregarded by the jury. These statements made by the Overpeck Brothers, although made out of court, and not under oath, also had a tendency to contradict the testimony of Tyler. Shauer v. Alterton, 151 U. S. 607, 14 Sup. Ct. 442, 38 L. Ed. 286. These statements, not having been made with the knowledge of Tyler, were not absolutely binding upon him, and the defendants might sustain their defense if the jury were satisfied that his evidence was true. But it cannot be said that his evidence was not uncontradicted, and that the jury were, therefore, bound to believe his evidence, and find a verdict in favor of the defendants. The rule, therefore, laid down in Drew v. Insurance Co., 6 S. D. 335, 61 N. W. 34, that the jury have no right arbitrarily or capriciously to disregard the testimony submitted to them by the court, does not apply. This statement of the Overpeck Brothers, made in 1887, and their letter written in 1892, were received in evidence without objection, and hence were in the case for all purposes. Again, the testimony of Tyler was not

of such a character as entitled it to entire confidence. The transactions between himself and the Overpecks, as detailed by him, might naturally create doubts in the minds of the jury as to the good faith of the transactions, and some of his statements were contradicted by Areli Overpeck when on the stand as a witness. We do not deem it necessary to detail the evidence in this opinion, or attempt to point out specifically wherein the evidence was conflicting, and it will be sufficient to say that, after a careful consideration of the evidence, we are satisfied the case was properly submitted to the jury, and that the jury had the right to determine as to the weight of the evidence and the credibility of the witnesses, and, as they evidently found that the Overpeck Brothers were not indebted to Tyler at the time the chattel mortgage was executed, we do not feel authorized to disturb their verdict. Finding no error in the record, the judgment of the court below and the order denying a new trial are affirmed.