McALLISTER, Respondent, *v.* ROCKY FORK COAL COMPANY, Appellant.

(No. 1,971.)

(Submitted October 21, 1904.    Decided December 1, 1904.)

*Trial—Jury—Disregard of Instructions—Appeal.*

Where the evidence in the record clearly shows that the jury disregarded the instructions of the trial court, the verdict will be set aside, without determining the propriety of the instructions.

*Appeal from District Court, Carbon County; Frank Henry, Judge.*

Action by James H. McAllister against the Rocky Fork Coal Company of Montana. From a judgment for plaintiff, and from

an order overruling a motion for a new trial, defendant appeals.
Reversed.

*Mr. William Wallace, Jr.,* for Appellant.

*Mr. George W. Pierson,* for Respondent.

MR. COMMISSIONER CLAYBERG prepared the follow-
ing opinion for the court:

Appeal from judgment against defendant, and from an order
overruling a motion for a new trial.

The action was to recover damages for a personal injury
arising from the alleged negligence of defendant. The record
discloses that plaintiff was employed at the time of the accident
in operating a shearing machine in defendant's coal mine; that
there was supplied to operators of these machines a pump jack
for raising the machines when such raising was required or nec-
essary; that this pump jack was intended to be operated by
means of a handle about 27 inches long, fitting closely in the
socket of the pump jack; that plaintiff used a sprag in such
operation, which is about 17 inches long, and pointed at both
ends, and which was intended for use in blocking the wheels of
cars; that the teeth or cogs upon the upright bar and upon the
sprockets of the pump jack used by plaintiff were so worn that,
in raising the shearing machine with this pump jack, the teeth
or cogs slipped past each other, and the weight of the shearing
machine, falling upon the upright bar, threw the sprag upward,
so that it struck plaintiff in the eye, destroying the same. The
negligence alleged, and upon which the judgment is based, is
want of reasonable care on the part of defendant in furnishing
the plaintiff this pump jack, which it is claimed was defective.
It is alleged in the complaint that the defendant knew that it
was out of repair, and that the plaintiff did not know it, and
could not have ascertained that fact by the exercise of reason-
able diligence. The answer denies all the material allegations
of the complaint, and alleges as a defense contributory negli-

gence of plaintiff, and that he assumed the risk of injury when he was employed by the defendant in the capacity of machine runner. Plaintiff testified that he had no knowledge of the worn condition of the pump jack, but testimony was given by defendant's witnesses, and also drawn out of some of plaintiff's witnesses on cross-examination, that the condition of the jack could have been ascertained by merely lifting the upright bar so as to expose the notches or cogs thereon, and by pushing the handle of the machine down so as to expose the upper sprocket, and by lifting the handle so as to expose the lower sprocket. Therefore defendant claims that plaintiff should be charged with knowledge of its condition. Defendant also claims that a pump jack is a common tool, which needs no inspection by the defendant, and that the plaintiff must have known of its condition at the time he used it, and therefore assumed the risk of injury from such use. Defendant further insists that the jack was not intended to be operated with a sprag, but with a handle made for that purpose, and that, if no handle was with the jack at the time plaintiff took it for use, it was his duty to have procured one prior to the use of the jack, and is guilty of contributory negligence which bars a recovery.

The court instructed the jury with reference to defendant's liability on account of the defective pump jack as follows:

"There is no duty, even as to complicated machinery, to see to it at all times that it is in perfect condition, but only to use reasonable care in its inspection. And as to defects that can be seen as readily by the person working with the implement as by an inspector specially appointed by the master, it is equally the duty of the workman using the tool or implement to know of the defect, if any there is. So as to the pump jack. If its slipping was due to the wearing of the teeth or ratchets, and this worn condition could have been discovered by an examination of the jack, then, in placing the plaintiff to work with such a pump jack, even though it was liable to slip, defendant would not be violating any duty owed plaintiff, and he could not recover in this action, unless you find by a preponderance of the

evidence that the condition of the pump jack could not have been seen by raising the lifting bar and examining its notches, and the possibility of its slipping could not have been thus discovered. The court instructs you it was the duty of the plaintiff to make such examination, and if by doing so he might have discovered the possibility of the jack slipping, his failure to do so would prevent him from recovering in this action, and your verdict must be for the defendant.

"If, as a reasonable person, possessed of ordinary skill requisite to run a machine and use a pump jack— and, having accepted employment for this purpose, plaintiff must be presumed to have possessed such skill—if the plaintiff, by raising the lifting bar, might have been warned of the possibility of the jack slipping, his failure to do so would prevent him from recovering in this action.

"Plaintiff, having accepted employment as a machineman and run this machine, could not be heard to say he did not possess the necessary skill to operate it and the pump jack belonging to it. And if he was in charge of the machine, it would be his duty to inspect it and the pump jack, and, the duty being upon him to perform this inspection, he could not recover in this action for any defect that could have been discovered by an ordinarily careful inspection."

These instructions were the law of the case, binding upon the jury, and it was the duty of the jury to follow them, notwithstanding they may be erroneous; and a verdict rendered in disregard of them was against the law. (*Murray* v. *Heinze,* 17 Mont. 353, 42 Pac. 1057, 43 Pac. 714; *State* v. *Dickinson,* 21 Mont. 595, 55 Pac. 539; *King* v. *Lincoln,* 26 Mont. 157, 66 Pac. 836.)

The record clearly discloses evidence tending to show that the condition of the pump jack could have been ascertained by an examination as above indicated. Therefore the verdict discloses that the instructions above quoted were disregarded by the jury.

We have not overlooked the testimony of plaintiff's witnesses to the effect that it could not be determined whether the jack

would slip without testing it by attempting to raise a weight. But such testimony does not, in our opinion, take the case out of the rule above announced, as the charge above quoted made the basic factor thereof the *condition* of the jack, and the fact that plaintiff could have ascertained that condition by merely looking at it in the way designated, and not whether the cogs would slip under a weight. If the cogs or teeth were worn, it might or might not have been dangerous, depending on the extent of the wear, and the circumstances under which it might be used. Under the charge above quoted, if plaintiff knew or should have known of its condition, and used it without objection, he assumed the risk of its dangerous condition, and the personal injury resulting from such use.

That part of the charge relating to the use of the sprag instead of a handle was also disregarded by the jury. The instructions in reference thereto were as follows:

"If the defendant company furnished a lever fitting the socket of this pump in the first instance, it would have discharged its duty in this regard. And in working the pump jack it would be the duty of the plaintiff to use such lever, and, if it was too long, to ask that it be cut off to proper length, or request another, shorter one. He would not be justified, because the lever originally furnished was too long, in using a sprag or other implement not intended for the purpose of pumping the jack, nor would he be justified in using such sprag simply because there was no lever with the pump jack at the time he started to work with the machine; but it would have been his duty to have asked for a proper lever, and if, without asking for the lever, he used the sprag, and the evidence fails to satisfy you by a preponderance or greater weight thereof that the use of the sprag did not assist in causing the injury, then plaintiff's use of the sprag is his own fault, and, whatever the fault of the defendant in the action, the plaintiff could not recover.

"In accordance with the foregoing, if the plaintiff could have used a lever fitting the socket, and with it have lifted the shearing machine with less danger to himself than with the stick he

did use, called a 'sprag,' he ought to have used the lever, and he would not be justified in failing to use it because he found none at the machine or with the jack at the time he started to work with it; but it would have been his duty to have gone or sent his assistant to have procured the proper lever before undertaking to use the jack. And if the accident was caused by the use of a sprag instead of the lever, he cannot recover, and your verdict must be for the defendant.

"Again, if a long lever could be used in any manner to lift the shearing machine, and its use would have diminished the danger resulting from possible slipping of the jack with the weight of the shearing machine upon it, or would have made it less likely that the point of the lever could have put out his eye, if it was put out by the point of the sprag or by the sprag itself, then he would have been bound to avoid the use of the sprag; and if he sustained his injury in consequence of the shortness of the sprag, either because he had not sufficient leverage to resist the impact of the dropping machine, or because its length was such as to enable it to reach and strike his eye, or because its shape and fitting in the socket diminished his power of control over the weight of the machine, then his injury would be due to the use of the sprag, and he would have assumed the risk of using it, and could not recover in the action, and your verdict must be for defendant."

The record discloses that plaintiff used a sprag instead of a handle when he operated the pump jack. It also discloses un-contradicted evidence introduced by defendant's witnesses tending to show that the use of a sprag was not as safe as the use of a handle as furnished by the defendant in the first instance, for the pump jack, and also that the injury to his eye would not have occurred as it did had a handle been used instead of a sprag, and that the injury might have been occasioned in consequence of the shortness and shape of the sprag. Therefore the verdict is directly in conflict with the instructions above recited.

Under the decisions of this court in *Murray* v. *Heinze, supra,* and other cases, we cannot determine upon this appeal whether

such instructions are erroneous or correct.   We therefore advise that the judgment and order appealed from be reversed, and the cause remanded for a new trial.

PER CURIAM.—For the reasons stated in the foregoing opinion, the judgment and order are reversed, and the cause is remanded.