Moore et al., Appellees, *v.*
McCarty's Heritage, Inc., Appellant.

(No. WD-77-39—Decided April 7, 1978.)

*Mr. Daniel W. Reddin III* and *Mr. Frank T. Pandora II*, for appellant.
*Mr. Thomas M. Willoughby* and *Mr. Edward G. Rinderknecht*, for appellees.

POTTER, P. J. Defendant, McCarty's Heritage, Inc., appeals from a judgment on a jury verdict of $13,500 in favor of plaintiffs, Fred H. and Patricia Moore, rendered in the Wood County Common Pleas Court. This action arose from the claimed negligent construction of a house in Bowling Green by defendant, which was sold by defendant to plaintiffs under a written contract.

The house was in a stage of partial construction when the contract of sale for a price of $41,900 was signed on February 14, 1973. Possession was given to plaintiffs, the purchase money and deed exchanged, and the sale closed on May 23, 1973. Before the closing date, defendant's construction work on the house was inspected on five occasions by the Wood County Building Inspector and certificates of compliance were issued for various phases of construction.

The parties agreed that the case should be tried under a negligence theory rather than under a breach of contract approach. The trial judge adopted the negligence theory and conducted the trial on that basis.

The evidence presented by plaintiffs consists largely of many claimed defects in construction, predicated upon the testimony of the plaintiffs who lived in the house after its completion and experienced the results of the claimed construction defects and shortcomings, and also upon the detailed testimony of their expert, professional engineer John Weithman, who examined and studied the claimed construction defects in May 1977.

Mr. Weithman estimated that the cost of repairs for the defects he described would be $12,000. Another witness, a Mr. Richmond, testified to additional costs in the amount of ap-

proximately $1,000. No opinion was elicited from either of these witnesses as to the diminution in market value of plaintiffs' realty as a result of the damage caused by the claimed shoddy construction by defendant. However, plaintiff Fred Moore testified that there was a reduction in the fair market value of plaintiffs' realty in the amount of $4,000 to $5,000 as a direct result of damage caused by defendant's negligent construction.

Defendant produced seven witnesses whose testimony largely refuted, or at least conflicted with, the plaintiffs' evidence concerning negligent construction. Most significantly, defendant's expert, realtor and appraiser John Pendeleton, testified on the issue of diminution in the fair market value of plaintiffs' realty directly resulting from the negligent construction, and stated that a complete correction of the defective items would increase the market value of the realty only $500.

The first assignment of error is that the jury verdict is against the weight of the evidence and contrary to law because the jury disregarded the jury instruction on the measure of damages applicable. The relevant part of the instruction on the issue of damages is as follows:

"You will determine from a preponderance of the evidence the amount of money that will reasonably compensate Mr. and Mrs. Moore for the actual damage to their residence or that they have suffered.

"Now when damage to real property is of a temporary nature and can be repaired so that the property can be restored to a condition it would have been in if there had been no negligence, then the owner may recover the reasonable cost of repairs necessary to restore it to that condition, unless it should first appear that such cost of repair is greater than the difference in the fair market value of the property immediately before and after the damage, in which case the differernce in this value, the difference in the market value, would be the amount recovered."

The foregoing instruction was a sincere effort by the trial court to give the correct rule of law concerning negligent damage to real estate, as articulated in *Ohio Collieries Co.* v. *Cocke* (1923), 107 Ohio St. 238, and in *Koch* v. *O'Brien & Nye*

*Cartage Co.* (1942), 37 Ohio Law Abs. 270.[1] See also, *Northwestern Ohio Natural Gas Co.* v. *First Congregational Church* (1933), 126 Ohio St. 140. However, the rule in these cases developed from factual situations in which the realty was in an undamaged condition until the defendant's negligence caused injury. In contrast, in the present case the realty, a house, was never in an undamaged condition. The defects due to the negligent construction existed prior to the completion of the house and prior to the time plaintiffs occupied the building. Therefore, we do not find the general rule, under which the trial court instructed the jury, to be applicable to this case.

"The general rule that the measure of damages for injury to real estate shall not exceed the difference in the market value of the entire tract immediately before and immediately after the injury is not an arbitrary or exact formula to be applied in every case without regard to whether its application would compensate the injured party fully for losses which are the proximate result of the wrong-doer's conduct." *Thatcher* v. *Lane Constr. Co.* (1970), 21 Ohio App. 2d 41, paragraph one of the syllabus (negligent destruction of trees and brush).

We find that plaintiffs have a right to hold the house for their own use as well as to hold it for sale, and if they elect the former they should be compensated for the injuries done them in that respect although those injuries may not substantially impair the market value of the building. Therefore, we find that the jury instruction on the measure of damages was incorrect in that it restricted recovery to the diminution in value if such exceeded the cost of repair.

However, we find that the jury did not follow the jury instruction on the issue of damages. There was credible evidence that the cost of repairs was at least $12,000, and perhaps exceeded $13,500. The only evidence on the diminution in market value (or increase in value by making all repairs) as a result of the damage was the testimony of defendant's expert, John Pendeleton, that such diminution in value was $500, and plaintiff Fred Moore's testimony that the diminution in fair market value was $4,000 to $5,000.

---

[1] *Ohio Collieries Co.* v. *Cocke* involved a damage claim of the owner of land against the defendant for removing subjacent support to plaintiff's realty. *Koch* v. *O'Brien & Nye Cartage Co.* involved negligent damage by defendant's truck to the foundation of plaintiff's house, causing walls of the house to collapse.

The jury is obligated to follow the law even if the charge is incorrect. See *Pennsylvania Co.* v. *Wasson* (1914), 3 Ohio App. 458, 468 as follows:

"The instruction of the court to the jury was correct. This is not challenged by the defendant in error, and even if it was not correct the verdict of the jury should be set aside for a violation of the instructions of the court, unless these instructions are challenged and disputed. *Drew* v. *Watertown Ins. Co.*, 6 S.D., 335, 61 N.W. Rep., 34; *McAllister* v. *Rocky Ford Coal Co.*, 31 Mont., 359, 78 Pac. Rep. 595."

To permit the jury to formulate its own law of damages invades the province of the judge. *Variety Iron & Steel Co.* v. *Poak* (1914), 89 Ohio St. 297, 310. For this court to say on the facts that the jury was right invades the province of the jury. The *Pennsylvania Co.* case states, at 468:

"By entering judgment after a remittitur had been made the court was not reducing an excessive verdict but was determining a question of fact which the law required the jury to determine. This we think the court could not do."

The above case and law contained therein is cited with approval in 4 Ohio Jurisprudence 2d, 460, Appellate Review, Section 1117 as follows:

"Verdict Disregarding Instructions.—Where from the special findings and the general verdict it appears that the jury disregarded an instruction given by the trial court concerning a material matter in issue, the judgment based on such verdict must be reversed. This is true even though the instruction was not correct, unless it was challenged and disputed."

In the case *sub judice* the conduct of the jury was prejudicial and the first assignment of error is well taken to the extent that the jury disregarded the trial judge's instruction as to the measure of damages, since the jury's verdict is therefore contrary to law.

The second assignment of error alleged that the trial court erred in charging the jury that violations of the Wood County Building Code were negligence as a matter of law and in failing to charge the jury using the verbatim language of the ordinance.

The trial judge instructed the jury that six specific sections of the Wood County Building Code were applicable to the facts, mentioning the section number and topic covered by

each section, but the judge did not read to the jury the sections verbatim. However, these sections and all others were contained in the Wood County Building Code admitted into evidence as an exhibit and taken to the jury room.

With reference to the Building Code sections the trial court instructed the jury as follows:

"Now there has been during the course of this trial references to the Wood County building code which has been adopted by the City of Bowling Green. Now you will have with you in the jury room this Uniform Code. Now testimony has alluded to certain of these code sections. It is not necessary that I read at this time to you certain of those sections.

"However, I will remind you that among others there was a reference to Section 403(a), and this relates to the ventilation of bathrooms; also to Section 1100.4, and this refers to the fire-resistant garage wall. There was a reference, a discussion, of Section 1201, this refers to the asphalt felt covering of the roof under the shingles. There was a reference to Section 1516.7, this relates to the disconnect on dryers and washers and this type of appliance. There was a reference to Section 1618, to several portions of that, having to do with the cold air ducts. And finally there was a reference to 2204, the gas line dirt leg.

"Now it is important for you to understand that in addition to the general obligation on the defendant to construct the plaintiffs' home using ordinary skill and care, these code sections to which I have specifically referred have particular significance. Because one who violates these code sections which impose a specific requirement, a violation of these code sections, that person is guilty of negligence as a matter of law, whether or not they used ordinary care. To repeat, it is negligence to violate one of these specific building code sections to which I have referred."

It was error to instruct the jury that a violation of a Wood County Building Code section was negligence as a matter of law. Some of these sections prescribe conduct for the builder in abstract or general terms, and some leave some discretion to the builder as to the selection of materials, substitutions, alternative choices and manner of construction.[2]

---

[2] Section 1618 of the building code reads as follows:

"Section 1618-1 * * * All return air ducts * * * may be constructed of metal, or 1 inch

A building code provision which prescribes a standard or obligation for a builder to follow in abstract or general terms, permitting alternative choices and use of discretion and setting no fixed and absolute standards of duty, cannot form a basis for a determination that a violation thereof by a builder is negligence *per se*. *Claypool* v. *Mohawk Motor, Inc.* (1951), 155 Ohio St. 8, 13; *Matz* v. *Curtis Cartage Co.* (1937), 132 Ohio St. 271; *Swoboda* v. *Brown* (1935), 129 Ohio St. 512; *Bounds* v. *Baldwin* (1940), 32 Ohio Law Abs. 91. The exceptions, limitations and qualifications of each of the six building code provisions should have been explained and the jury instructed to consider whether any of such code provisions were violated and whether such violation was negligence, that is, a failure to use reasonable care. *McKee* v. *New Idea, Inc.* (1942), 36 Ohio Law Abs. 563.

Moreover, with reference to Sections 403(B), 1618, and 2204 of the Wood County Building Code, which the trial judge instructed the jury to consider, there is an arguable contention that these provisions were not enacted for the protection of an interest of plaintiffs for which they now claim damages. To put it another way, the injuries claimed by plaintiffs are not of the character which were contemplated to be protected by these provisions of the building code. Where a building code imposes upon a builder a specific duty for the protection or benefit of others and he neglects to perform that duty, he is liable to those for whose protection or benefit it was imposed for any damages which were proximately produced by such neglect. *Swoboda* v. *Brown, supra,* at 521.

On the topic of Wood County Building Code provisions, the jury should have been instructed on the content of the applicable provisions, and further instructed that it was the function of the jury to determine whether any of such provisions were violated, whether such violations constituted negligence by defendant, whether such negligence proximately caused damage to plaintiff, and, if so, to what extent. *Swoboda* v. *Brown, supra.*

---

(nominal) width boards, or *other suitable material,* provided that no material more flammable than 1 inch width boards shall be used.

"Paragraph 5 * * * the interior of combustible ducts shall be lined with (sic) uncombustible material *at points where there might be danger from incandescent particles* dropped through the register or heater * * *." (Emphasis added.)

However, as to three of the building code provisions, defense counsel in final argument conceded a violation thereof and thus waived any error as to jury instructions regarding these. As to the three remaining building code provisions, Chief Inspector Benzston gave testimony which remained uncontradicted that these provisions were violated. Therefore, there was no error prejudicial to defendant with regard to the jury instructions concerning building code violations.

Accordingly, the second assignment of error is not well taken.

The third assignment of error claimed an abuse of discretion by the trial court in denying defendant's motion for a new trial. This assignment of error is based upon the same claimed errors and reasons urged in the first assignment of error, i.e., the verdict is excessive and against the weight of the evidence, and the jury failed to follow jury instructions on the issue of damages. Consistent with our finding that the first assignment of error is well taken, to the same extent the third assignment of error is also well taken.

Plaintiff, in a cross-appeal, assigned two errors concerning an abuse of discretion by the trial court in its refusal, upon the request of plaintiff, to instruct the jury as to punitive or exemplary damages and to permit the jury to award punitive damages. The case was tried and submitted on the theory of negligence. The culpability of the defendant on the evidence in this record rises no higher or greater than negligence. Negligent conduct of a defendant which proximately causes damage to a plaintiff does not entitle a plaintiff to a jury instruction on or an award for punitive damages.

Therefore the plaintiffs' two assignments of error pertaining to punitive damages are not well taken.

The judgment of the Wood County Common Pleas Court is reversed and the cause is remanded for further proceedings in accordance with law.

*Judgment reversed and*
*cause remanded.*

CONNORS, J. concurs.

BROWN J., dissents, in part, and concurs, in part.

BROWN, J., dissents from the judgment of reversal and the finding that defendant's first and third assignments of error

are well taken, but concurs in the finding that defendant's second assignment of error is not well taken and that plaintiff's two assignments of error, in its cross-appeal, are not well taken.

My dissent from the finding that defendant's first and third assignments of error are not well taken is based on the following facts and reasons. These assignments were predicated upon an error contained in the jury instruction on the matter of damages. The court instructed the jury that the cost of repairs was limited by the diminution in market value. The error was harmless or nonprejudicial in the context of these facts. The defendant in his trial brief requested the trial judge to give this instruction. The trial judge gave the instruction as part of his general charge in the exact language requested by the defendant. The jury verdict of $13,500 is in exact conformity and harmony with the correct rule of damages, i.e., the costs of repairs, and the verdict indicates that the jury disregarded the incorrect portion of the charge concerning a limitation to a diminution in market value. The highest figure from any witness as to the diminution in market value is $5,000. At the completion of the general instructions given to the jury, the trial judge asked counsel for both parties if they had any suggestions or additions. Defense counsel made a specific objection only to the negligence-*per se* instruction concerning building code violations. No objection was voiced concerning the measure-of-damages instruction.

The instruction given on the measure of damages, limiting damages to a diminution in value, i.e., $5,000, was prejudicial only to plaintiff and not to the defendant. How could the defendant be harmed by a jury instruction which told the jury for practical purposes to limit the verdict to $5,000, the diminution in value, when the correct measure, the cost of repairs, was $13,500?

On the principle of invited error, a party (the defendant herein) cannot predicate an error in an instruction given at his own request. A party cannot attack a judgment for errors which he has induced the trial court to commit and for which he is responsible. *Hasapes* v. *Drake* (1970), 24 Ohio St. 2d. 1; *Carrothers* v. *Hunter* (1970), 23 Ohio St. 2d. 99; *Lester* v. *Leuck* (1943), 142 Ohio St. 91; 3 Ohio Jurisprudence 2d 641, Appellate Review, Section 693 and 696.

A party cannot complain of a jury instruction, even if it is incorrect, where the instruction is too strong in its favor, or is one that he has no right to ask, or the instruction is prejudicial only to the other party. *Elser* v. *Parke* (1943), 142 Ohio St. 261; *Parish & Bingham Corp.* v. *Jackson* (1921), 16 Ohio App. 51, 59; 3 Ohio Jurisprudence 2d 638, Appellate Review, Section 690.

Under the harmless error rule, the appellate court must disregard any error or defect in a trial proceeding which does not affect the substantial rights of the parties. Civ. R. 61; *Smith* v. *Flesher* (1967) 12 Ohio St. 2d. 107; 4 Ohio Jurisprudence 2d 18, Appellate Review, Section 829, and Supplement, Section 828.1.

Errors in jury instructions should be regarded by the reviewing court as harmless where the fact that the jury was not misled appears affirmatively from the verdict rendered. 4 Ohio Jurisprudence 2d 353, Appellate Review, Section 1035.

Lastly, defendant, by completely failing to object to the general jury instructions concerning the measure of damages, waived a right to claim an error concerning that instruction by reason of the specific mandate of Civ. R. 51(A), which provides, in part:

"A party may not assign as error the giving or the failure to give any instruction unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."