WALLACE, APPELLANT, *v.* WEAVER ET AL., RESPONDENTS.

(No. 3,255.)

(Submitted May 19, 1913.   Decided June 2, 1913.)

[133 Pac. 1099.]

*Water Rights—Violation of Decree—Nominal Damages—Actions —Depositing Debris—Evidence—Instructions—Law of Case— Theory of Case—Conclusiveness on Appeal.*

Water Rights—Violation of Decree—Nominal Damages.
    1.   Though the violation of a water right decree may give rise to a proceeding in contempt, it is not sufficient to constitute a cause of action, even for nominal damages, since one to whom such a right is decreed neither owns the water nor the channel of the stream out of which it is taken, but merely has the right to use the water when it is needed; and therefore the rule that in a case of trespass upon real property, strictly speaking, the plaintiff has a right of action for nominal damages at least, has not any application.

Pleading and Practice—Error and Appeal—Refusal to Strike.
    2.   Reversible error may not be predicated upon a refusal to strike a so-called affirmative defense which in reality was no more than a denial in affirmative form.

Water Rights—Depositing Debris—Evidence as to Conditions on Adjoining Lands—When Inadmissible.
    3.   In the absence of a showing that the conditions at the two places were similar, defendants' evidence that debris had not been deposited upon land situated above that of plaintiff, for damage to crops on which because of defendants' wrongful use of water plaintiff sought damages and injunctive relief, was improperly admitted.

Instructions—Law of Case.
    4.   The instructions to the jury constitute the law of the case, whether right or wrong; a verdict rendered contrary to them is against law and cannot stand.

Appeal and Error—Theory of Case—Conclusiveness.

    5. A party who consents to the trial of a cause in the district court upon a certain theory as to his liability in the premises is barred from urging a theory in conflict therewith on appeal.

Water Rights—Extent of Right of Prior Appropriator.

    6. A prior appropriator of all the water in a stream is entitled to the maximum flow when needed, and may not be limited to the average flow.

Appeal and Error—Recovery of Nominal Damages.

    7. A judgment should not be reversed and a new trial granted for the sole purpose of enabling appellant to recover nominal damages, unless he is substantially prejudiced by a failure to award such damages, as where the judgment carries costs.

*Appeal from District Court, Granite County; J. Miller Smith, a Judge of the First Judicial District, presiding.*

ACTION by William Wallace against James P. Weaver, Peter Noid, and C. E. Goldberg. From a judgment in favor of defendants and an order denying him a new trial, plaintiff appeals. Reversed and remanded.

*Mr. Edward Scharnikow,* and *Messrs. Rodgers & Rodgers,* for Appellant, submitted a brief, and one in reply to that of Respondents; *Mr. Scharnikow* and *Mr. W. B. Rodgers* argued the cause orally.

*Mr. D. M. Durfee,* and *Mr. W. E. Moore,* for Respondents, submitted a brief and argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In 1865, William Wallace and his predecessors in interest located a ranch upon Dunkleberg creek, in Granite and Powell counties, appropriated all of the waters of that creek for irrigation and other useful purposes, and thereafter used all the waters of said creek for such purposes during the irrigation season in every year, until interfered with by defendants. Many years after Wallace's appropriation, defendants Noid and Weaver located upon Dunkleberg creek above the ranch of Wallace, and about 1900 Weaver appropriated 200 inches of the waters of Gold creek, conveyed them into the channel of Dunkle-

berg creek and, by means of ditches tapping that creek, applied them to use upon his ranch. By some arrangement Noid secured an interest in the right which Weaver claimed. In 1906 a controversy arose and Wallace brought an action against Noid and Weaver, which action was numbered 734 on the records of the clerk of the court of Granite county. In that action Wallace alleged that defendants Noid and Weaver conducted the Gold creek water through a ditch from Gold creek to the top of a divide between Carruthers creek and Dunkleberg creek and on the Dunkleberg creek side of the divide, and there turned the water loose and suffered it to run down the mountain side into Dunkleberg creek, whereby large quantities of earth, rock and other debris were carried down into Dunkleberg creek, polluting the waters of that creek, interfering with the flow of springs which constituted a part of the supply of Dunkleberg creek, and that large quantities of this debris were carried down to Wallace's ranch and through his ditches over his property. It was further alleged that defendants were taking out of Dunkleberg creek much larger quantities of water than they were turning into the creek from Gold creek. In that action the defendants Noid and Weaver answered jointly, denying all the allegations of plaintiff's complaint with respect to their wrongful acts, and the defendant Weaver set forth affirmatively the facts relating to his appropriation of the Gold creek water and asked that his right to use the channel of Dunkleberg creek for conveying that water to his ranch be confirmed. The issues being settled and the cause ready for trial, the parties reached an agreement and a stipulation was duly entered into for a consent decree in favor of Wallace and against Noid and Weaver, and that decree was rendered and entered on September 27, 1907. The decree follows the stipulation of the parties and specifically enjoins the defendants in that action from discharging the waters of Gold creek at the top of the divide and permitting them to flow down the mountain side into Dunkleberg creek, and from using, controlling or handling the waters of Gold creek in the manner that the same had theretofore been handled by them, as set forth in plaintiff's complaint in that action. They

were further enjoined from using or handling the water of Gold
creek in any manner so as to cause the same to carry down
into the channel of Dunkleberg creek any debris whatever or
depositing the debris about Dunkleberg creek so that it would
find its way into the creek channel or interfere with the springs
at its headwaters or along its course. They were also enjoined
from taking out of Dunkleberg creek more water than they
conducted into it from Gold creek, with a reasonable allowance
for loss by seepage and evaporation. The right of defendants
to use the channel of Dunkleberg creek through which to flow
their Gold creek water was recognized and confirmed, but they
were particularly enjoined from using it in the manner in which
they had theretofore done; and by a mandatory provision they
were required to devise and construct artificial ways and means
through which the water should be conducted from the top of
the divide into Dunkleberg creek so as to prevent debris from
being washed down into Dunkleberg creek. In May, 1910, this
action was commenced by Wallace against Noid, Weaver and
Goldberg. In his complaint the plaintiff charges that the de-
fendants have violated the decree in cause 734; that they have
continued to conduct the waters of Gold creek into Dunkleberg
creek channel in the same manner as they did before the decree
was entered; that they have failed to devise any means for con-
ducting the water from the top of the divide into Dunkleberg
creek, and that they have taken from Dunkleberg creek larger
quantities of water than they conducted into it from Gold creek.
It is alleged that by reason of these violations of the decree
and the wrongful conduct of these defendants, plaintiff has suf-
fered damages through the loss of crops, injury to certain of his
crops, and a permanent loss of a portion of the waters of Dunkle-
berg creek by reason of the destruction of some of the springs
at the headwaters of that stream. It is alleged that defendant
Weaver violated the provisions of the decree directly, and that
he further violated them acting through Goldberg. To this
complaint, defendants Noid and Goldberg interposed a joint
answer, which is in effect a general denial of the allegations of
the complaint; a plea of the bar of the statute of limitations,

and an affirmative defense, so called, in which it is alleged that the acts complained of by the plaintiff are the identical acts of which complaint was made in cause 734, and that the decree in that case is an adjudication upon these particular acts. The separate answer of Weaver is to all intents and purposes the same as that of Noid and Goldberg. There is a specific denial in his answer that Weaver used any of the waters of Dunkleberg creek during the season of 1909. Plaintiff demurred to these answers, but the demurrers were overruled and replies were filed. The cause was brought on for trial; the evidence was introduced, and at its conclusion the plaintiff requested the court to charge the jury that the evidence showed without any contradiction that the defendants had discharged the waters of Gold creek into Dunkleberg creek during 1908 and 1909 in the same manner as said waters had been discharged at the time and prior to the entry of the decree in cause 734, and "therefore you are instructed that your verdict in this case must be in favor of plaintiff and against the defendants." He also requested another instruction relative to the measure of damages based upon the instruction just referred to. These two requests were denied. The trial resulted in a verdict and judgment in favor of defendants, and from that judgment and from an order denying him a new trial, the plaintiff has appealed.

1. It is argued that the court erred in refusing to give plaintiff's requested instructions 2 and 3. It is urged that the evidence shows without any substantial contradiction that the defendants had not made any material change in the method of conducting the Gold creek water into Dunkleberg creek after the decree in No. 734 was entered; but we are unable to agree with this broad statement. There is evidence that they constructed certain ditches at the foot of the divide which caught up the waters as they came down the mountain side, and conducted them into Dunkleberg creek on grade. The evidence is not very clear as to the efficacy of this means of preventing the injury described in plaintiff's complaint in cause 734; but the court was justified in its refusal to give these instructions for another [1] reason. Counsel insist that for the violation of the decree

in cause 734, plaintiff is entitled to a judgment for nominal damages at least, and certain authorities are cited, but they do not bear out counsel's contention. Each is a case of trespass upon real property—strictly speaking—and it is elementary that in such a case the plaintiff whose property is trespassed upon has a right of action for nominal damages at least. But counsel overlook the peculiar character of plaintiff's property in Dunkleberg creek. However secure he may be in his right to the use of the waters of that creek, he does not own the waters and he does not own the channel of the creek. He has merely the right to their use when their use is needed; when the use is not needed, his rights are not superior to those of anyone else. So that the bare violation of the decree in 734 does not of itself give the plaintiff a right of action. The statute provides a means for punishing the defendants for their contempt. . In *Dillon* v. *Great Northern Ry. Co.*, 38 Mont. 485, 100 Pac. 960, we analyzed a cause of action for legal wrong and said: "To constitute a cause of action for tort, then, the plaintiff's right must have been infringed by the wrongful act of the defendant, with the result that plaintiff suffered damages." While the mere violation of the decree might constitute a sufficient showing in a contempt proceeding, it is not sufficient to constitute a cause of action in favor of plaintiff, even for nominal damages.

2. The so-called affirmative defense in each answer is nothing [2] more than a denial in affirmative form. To strike it would simplify the pleadings, but reversible error cannot be predicated upon the trial court's refusal to do so.

3. Because of errors committed upon the trial of the cause a reversal of this judgment must follow. We shall therefore not discuss the question of the sufficiency of the evidence. The plaintiff complained that debris was carried down through the [3] channel of Dunkleberg creek and through his irrigating ditches over his meadow land, by reason whereof his hay crop was greatly injured, and that this resulted from the acts of defendants in handling the waters of Gold creek in the manner in which it is alleged they were handled. Upon the trial he offered evidence tending to show that silt was deposited over

his meadow land and that his hay, when it was cut, was dusty, dirty and greatly depreciated in value. The defendants, over objection of plaintiff, offered evidence that this condition did not prevail upon Goldberg's ranch, which is situated above the Wallace ranch. Witnesses testified that there was no deposit left on Goldberg's ranch after irrigation; that there was no dust or dirt upon his hay and that his hay crop was of first-class quality. The error in the admission of this evidence is apparent. There was not any attempt made to show that the conditions at the Goldberg and Wallace ranches were similar. It is conceded by counsel for appellant that if conditions were shown to be similar, this evidence would have been competent as tending to disprove the plaintiff's contention. But in the absence of any showing that the conditions were similar, the evidence is not only of no probative force, but likely to mislead the jury into the belief that Wallace's contention cannot be true because the same result was not found on the Goldberg ranch. To make the evidence competent it was incumbent upon the defendants to show that the conditions were similar.

4. Upon the trial the court gave an instruction numbered 2, as follows: "You are instructed that if you believe from the preponderance of the testimony that the defendants have within the periods of time alleged in plaintiff's complaint violated the terms and provisions of such decree in said suit No. 734 in any, either, or all of the respects set out in plaintiff's complaint, that for such violations you should award to the plaintiff damages against the defendants, such damages not to exceed the sum of five thousand dollars, the amount demanded in plaintiff's complaint." That the jury disregarded this instruction and returned a verdict directly contrary to its provisions, there cannot be any doubt. The evidence offered by the defendants discloses that they did not provide any artificial ways or means for conducting the Gold creek waters from the top of the divide down the mountain side into Dunkleberg creek, as they were enjoined to do in the decree in cause 734. This failure upon their part is charged in plaintiff's complaint, and instruction 2 above specifically directs the jury that if they found from the

evidence that the defendants failed in that regard, their verdict should be for the plaintiff. That they did fail is disclosed by their own evidence and that of every other witness who testified with regard to the situation at that point. There was no controversy over it whatever, and the verdict of the jury could not have been for the defendants. Counsel for respondents find fault with instruction No. 2 given, and we are now asked to say that the rule heretofore adopted in this state should be changed and, unless an instruction correctly states the law, the jury should not be bound by it. In *Murray* v. *Heinze,* 17 Mont. 353, 42 Pac. 1057, this court, speaking through Chief Justice Pemberton, said: "It needs no authority, then, to say that the jury is bound to take the law from the court.  *  *  * And, when the law is announced by the court, it is the law of the case, until overruled by a higher authority. It follows, then, that a verdict in direct conflict with the law of the court is a verdict against the law.  *  *  * So far as the jury is concerned, there is no such thing as the charge of the judge being contrary to law, because, whatever may be his charge, it is the law to them.  *  *  * It matters not if the instruction disobeyed be itself erroneous in point of law. It is nevertheless binding upon the jury, who can no more be permitted to look beyond the instruction of the court to ascertain the law than they would be allowed to go outside of the evidence to find the facts of the case.  *  *  * If the contention of appellant is correct, the time of this court in hearing future appeals will be devoted to determining whether the court or the jury were right in their views of the law in the trial of the cause in the lower court. Authority or no authority, we cannot give our sanction to a practice that would lead to such results. Such a course would ultimately result in overturning our system of keeping separate and distinct the powers and duties of courts and juries, confining each to its own proper province, in the degradation of the courts, and confusion and chaos in the administration of the law. Such calamities are much more to be deplored than the inconvenience and costs of a new trial in cases where juries usurp the powers of the court." The decision in that case

has been followed ever since. (*State* v. *Dickinson,* 21 Mont. 595, 55 Pac. 539; *King* v. *Lincoln,* 26 Mont. 157, 66 Pac. 836; *McAllister* v. *Rocky Fork Coal Co.,* 31 Mont. 359, 78 Pac. 595; *State* v. *Radmilovich,* 40 Mont. 93, 105 Pac. 91; *Bliss* v. *Wolcott,* 40 Mont. 491, 135 Am. St. Rep. 636, 107 Pac. 423; *Allen* v. *Bear Creek Coal Co.,* 43 Mont. 269, 115 Pac. 673; *Lynes* v. *Northern Pac. Ry. Co.,* 43 Mont. 317, Ann. Cas. 1912C, 183, 117 Pac. 81; *Mason* v. *Northern Pac. Ry. Co.,* 45 Mont. 474, 124 Pac. 271; *Gleason* v. *Missouri River P. Co.,* 46 Mont. 395, 128 Pac. 586.) Any other rule than that announced above would confer upon the jurors in every instance the authority to determine the law of the case as well as the facts; and we are not prepared to go to that extreme limit, even for the sake of preventing the reversal of a judgment.

5. In any event, counsel for respondent contend that there was no liability on the part of the defendant Weaver. We do not agree with this, as a matter of fact. But even if their con- [5] tention be correct, they would be precluded from making the assertion in this case, because of the fact that without any objection on their part they suffered the trial court to give instruction No. 3, as follows: "You are instructed that if you believe from a preponderance of the evidence, that there were violations of the provisions of the decree set out in plaintiff's complaint, between the periods of time mentioned therein by the defendant Goldberg after he went into possession and control of what is known as the Goldberg lands, and into possession and control of what is known as the Gold Creek Ditch and waters flowing therein, that the defendant Goldberg and the defendant Weaver are jointly liable and responsible to answer for any damages to the plaintiff therefor." By their failure to object to this instruction in the court below the defendants—including defendant Weaver—consented to the rule of liability which it announces and will not be heard in this court to urge a theory in conflict with it. (*Cohen* v. *Clark,* 44 Mont. 151, 119 Pac. 775.)

6. The contention of defendants that they took from Dunkleberg creek no more water than they conducted into it from Gold

creek, with ample allowance for loss by seepage, evaporation, *etc.,* is founded, in part at least, upon a method of dividing the water for which defendants cannot possibly find any justification in law. Plaintiff, as the prior appropriator of all the [6] waters of Dunkleberg creek, was entitled to the maximum flow of that stream when needed and could not be limited to the average flow—a result brought about by defendant's method of dividing the waters.

7. Contending that if plaintiff was entitled to recover at all, he was entitled only to nominal damages, counsel for respondents in their brief say: "The rule is well settled that after verdict of a jury, and the refusal of the trial court to grant a new trial, the judgment will not be reversed for a failure to find nominal damages." To this there are two objections: (1) While the statement is correct in part, it is not a correct statement of the rule. The rule is: "A judgment for defendant will not be reversed and a new trial granted *merely* to enable appellant to recover nominal damages." (3 Cyc. 446; *McCauley* v. *McKeig,* 8 Mont. 389, 21 Pac. 22, 16 Morr. Min. Rep. 1; *McAllister* v. *Clement,* 75 Cal. 182, 16 Pac. 775; *Johnson* v. *Cook,* 24 Wash. 474, 64 Pac. 729.) (2) The rule, when correctly stated, is not of universal application. "But a failure to award nominal damages is reversible error where plaintiff is substantially prejudiced thereby—as where the judgment carries costs." (3 Cyc. 447, and cases cited.) This record does not show that plaintiff is entitled to nominal damages *only.* According to his theory and the testimony offered by him, he is entitled to substantial damages. The record does disclose that if the judgment in favor of defendants is allowed to stand, plaintiff will be compelled to pay them $105 awarded them as costs.

Because of errors in the admission of evidence, and because of the fact that the verdict is contrary to the law, the judgment and order are reversed and the cause is remanded for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.