BUSBEE, RESPONDENT, *v.* GAGNON CO., APPELLANT.

(No. 3,449.)

(Submitted January 6, 1915.   Decided January 23, 1915.)

[146 Pac. 275.]

*Contracts — Breach—Sales — Personal Property — Warranty—Mitigation of Damages—Nominal Damages—New Trial—Counterclaim—Splitting Causes of Action—Witness—Credibility.*

New Trial—Nominal Damages.
1.  A new trial may not be granted merely for the purpose of allowing a party to recover nominal damages.

Contracts—Breach—Nominal Damages—New Trial.
2.  In an action against a builder for breach of a contract calling for the delivery of a certain number of brick at a given time, evidence in support of a counterclaim for damages because of plaintiff's omis-

sion to deliver a sufficient number to keep the work going, *held* to justify recovery of no more than a nominal sum, failure to award which did not warrant the granting of a new trial, under the rule above.

[As to measure of damages for defective work under a building contract, see note in Ann. Cas. 1913B, 781.]

Same—Mitigation of Damages—Duty of Plaintiff.
3. One claiming to have been damaged by breach of a contract is bound to take measures, if reasonably possible, to mitigate the resulting injury.

[As to admissibility in evidence of matters occurring after beginning of action in reduction of damages, see note in Ann. Cas. 1914A, 1037.]

Same—Counterclaims—Splitting Causes of Action—Effect.
4. Where defendant, instead of including in one counterclaim damages which were one of the natural consequences of delay resulting from plaintiff's failure to deliver brick as required, split his cause of action into two counterclaims and recovered on the first, he was not entitled to even nominal damages on the second.

Same—Sales—Personal Property—Warranty—Remedies.
5. One who purchases articles for a particular purpose need not rescind the contract and restore them to the seller upon discovering a breach of the implied warranty (Rev. Codes, sec. 5110), but may set up his claim for damages by way of counterclaim in an action by the plaintiff for the purchase price.

Same—Breach—Witnesses—Credibility.
6. Where defendant contractor promptly paid for all brick delivered and used them in the construction of a building, without complaint that they were not of suitable quality, the court did not abuse its discretion in disregarding his testimony in support of his counterclaim based on their alleged unfitness for use in the walls of a building.

[As to credibility of witnesses, see note in 86 Am. Dec. 398.]

*Appeal from District Court, Granite County; Geo. B. Winston, Judge.*

Action by L. M. Busbee against the Gagnon Company. Judgment for the plaintiff, and defendant appeals from it and an order denying its motion for a new trial. Affirmed.

*Mr. D. M. Durfee* and *Mr. W. E. Moore,* for Appellant, submitted a brief, and argued the cause orally.

Where delay has been caused by breach of contract, the party injured has a right to recover from the person committing the breach all extra cost and expense to which he has been put by reason of such breach of the contract. (*McKenzie* v. *Mitchell,* 123 Ga. 72, 51 S. E. 34; *National Surety Co.* v. *Thompson Brick*

*& Contracting Co.,* 176 Ill. 156, 52 N. E. 938; *Rollins* v. *Clay-
brook,* 22 Mo. 405; *Hammond* v. *Beeson,* 112 Mo. 190, 20 S. W.
474; *Waco Artesian Water Co.* v. *Cauble,* 19 Tex. Civ. App. 417,
47 S. W. 538; *Citizens' El. L. & P. Co.* v. *Gonzales W. P. Co.*
(Tex. Civ. App.), 76 S. W. 577; *Shurter* v. *Butler,* 43 Tex. Civ.
App. 353, 94 S. W. 1084.) Inability to perform a contract is no
defense to an action brought to fulfill, unless the inability
amounts to an impossibility. (*Bates Machinery Co.* v. *Morton
I. Works,* 113 Ky. 372, 68 S. W. 423; *Sweitzer* v. *Pinconning
Co.,* 59 Mich. 488, 26 N. W. 762.) "A party must show per-
formance on his part of a contract before he can compel other
parties to perform it." (*Meyer* v. *Christopher,* 176 Mo. 580, 75
S. W. 750; *Downey* v. *Burke,* 23 Mo. 228; *Hall* v. *Little,* 85
N. Y. Supp. 653, 89 App. Div. 524.)

Where time is considered to be of the essence of a contract,
it need not be stated in the words of the statute, but if it can
be seen from the terms of the contract itself that time is of the
essence of the contract, the provisions of the statute have been
complied with. (*Miller* v. *Cox,* 96 Cal. 339, 31 Pac. 161.) "No
particular form of stipulation is necessary to make time the
essence of the contract. Any clause will carry that effect which
clearly provides that the contract is to be void if fulfillment is
not within a prescribed time." (*Martin* v. *Morgan,* 87 Cal.
203, 22 Am. St. Rep. 240, 25 Pac. 350.)

In *Brown* v. *Sayles,* 27 Vt. 227, it is said: "In a contract to
manufacture an article at a fixed price there is an implied war-
ranty that it should be of a medium quality of its kind." (See,
also, *Snyder* v. *Holt Mfg. Co.,* 134 Cal. 324, 66 Pac. 311; *Fisk*
**v.** *Tank,* 12 Wis. 276, 78 Am. Dec. 737; *Bobrick Chemical Co.*
**v.** *Prest-O-Lite Co.,* 160 Cal. 209, 116 Pac. 747; *Miller & Co.* v.
*Moore etc. Co.,* 83 Ga. 684, 20 Am. St. Rep. 329, 6 L. R. A, 374,
10 S. E. 360; *Fox* v. *Stockton etc. Co.,* 83 Cal. 333, 23 Pac. 295.)

Was there a waiver by the defendant on either of the two
provisions of the contract, that is, the provision requiring bricks
to be delivered "in sufficient quantities to keep the work going."
as well as the implied provision that the brick delivered should

be suitable for the purpose for which they were intended? Authorities, almost without exception, are to the effect that where a person has contracted with a manufacturer to furnish material for a specific purpose, the acceptance of material not of a quality required for that purpose is not a waiver of the implied warranty that it was to be up to a certain standard. (*Smith* v. *Brady*, 17 N. Y. 173, 72 Am. Dec. 442; *Bushman* v. *Taylor*, 2 Ind. App. 12, 50 Am. St. Rep. 229, 28 N. E. 97.) It is especially held to be the rule where the contractor has given a bond to fulfill his contract within a certain specified time, as was done by the defendant in this case. (*Ketchum* v. *Wells*, 19 Wis. 25; *Cox* v. *Long*, 69 N. C. 7; *Smith* v. *Brady, supra.*)

It was argued in the case in the court below that a payment of the part of the purchase price of the brick was a waiver of any defect in the material. In *Weeks* v. *Rector etc.*, 67 N. Y. Supp. 670, 56 App. Div. 195, it was held that: "Where a contractor has sustained damages by reason of a delay in the prosecution of his work caused by the owner, his receipt of the stipulated contract price is not a waiver of his right to proceed against such owner for the damages sustained by the violation of the agreement." (See, also, *Webber* v. *Mapes*, 98 App. Div. 165, 90 N. Y. Supp. 225; *Uhler* v. *Sanderson*, 38 Pa. 128; *Franklyn* v. *Schultz*, 23 Mont. 165, 57 Pac. 1037; *Consaul* v. *Sheldon*, 35 Neb. 247, 52 N. W. 1104.)

*Mr. Wingfield L. Brown,* for Respondent, submitted a brief and argued the cause orally.

"Time is never considered as of the essence of a contract unless by its terms expressly so provided." (Rev. Codes, sec. 5047; *Snyder* v. *Stribling*, 18 Okl. 168, 89 Pac. 233; *Puls* v. *Casey*, 18 Okl. 142, 92 Pac. 388; *Merk* v. *Bowery Min. Co.*, 31 Mont. 298, 78 Pac. 524.) The California authorities cited by counsel for the appellant are not in point, for the reason that California has no Code provision similar to the section of the Montana Code above quoted. (2 Kerr's Cyc. Codes of Cal., p. 1401.) *Miller* v. *Cox*, 96 Cal. 339, 31 Pac. 161, construed

section 1492 of the California Code, a section similar to section 4936 of the Revised Codes, and has no application whatever to the point discussed here.

"A buyer of personalty cannot, after acceptance without protest, and in the absence of fraud or breach of warranty, claim that the goods were damaged when delivered." (*Talbot Paving Co.* v. *Gorman,* 103 Mich. 403, 27 L. R. A. .97, 61 N. W. 655; *Browning* v. *McNear,* 145 Cal. 272, 78 Pac. 722; *Studer* v. *Bleistein,* 115 N. Y. 316, 5 L. R. A. 702, 22 N. E. 243; *Jones* v. *McEwan,* 91 Ky. 373, 12 L. R. A. 399, 16 S. W. 81; *Miller & Co.* v. *Moore etc. Co.,* 83 Ga. 684, 20 Am. St. Rep. 329, 6 L. R. A. 384, 10 S. E. 360; 24 Am. & Eng. Ency. of Law, 2d ed., 1092.)

The alleged damage set out in defendant's third defense and counterclaim was too uncertain, remote and contingent; they do not arise from the natural course of things from the breach itself, or are such as may reasonably be supposed to have been contemplated by the parties, when making the contract, as the probable result of the breach. (13 Cyc. 33, 35; *Sherman Center Town Co.* v. *Leonard,* 46 Kan. 354, 26 Am. St. Rep. 101, 26 Pac. 717; *Friend & Terry L. Co.* v. *Miller,* 67 Cal. 464, 8 Pac. 40; *Plymouth Gold Min. Co.* v. *United States Fid. Co.,* 35 Mont. 30, 10 Ann. Cas. 951, 88 Pac. 565; 8 Am. & Eng. Ency. of Law, 2d ed., 608–612, and notes.)

That part payment with full knowledge of the facts tends to prove a waiver of any defects in the performance, the authorities are all agreed. (*Lackman* v. *Simpson,* 46 Mont. 518, 29 Pac. 325; citing *Johnson* v. *Gallatin Val. M. Co.,* 38 Mont. 83, 98 Pac. 883; *Monroe Water Works* v. *City of Monroe,* 110 Wis. 11, 85 N. W. 685; *Katz* v. *Bedford,* 77 Cal. 319, 1 L. R. A. 826, 19 Pac. 523; *California So. H. Co.* v. *Callender,* 94 Cal. 120, 28 Am. St. Rep. 99, 29 Pac. 859; *Phillips & Colby Con. Co.* v. *Seymour,* 91 U. S. 646, 23 L. Ed. 341; *Morehouse* v. *Comstock,* 42 Wis. 626; *Dounce* v. *Dow,* 64 N. Y. 411.) The evidence of acceptance and waiver in the *Lackman Case, supra,* is no stronger, if as convincing, than the facts in this. The court there held that such evidence was sufficient to go to a jury

on the above points. In this case it was equally necessary and proper that the court should consider the facts in arriving at a judgment. (*Reed* v. *Randall,* 29 N. Y. 358, 86 Am. Dec. 305, 312; *Prickett* v. *McFadden,* 8 Ill. App. 197; *Barton* v. *Kane,* 17 Wis. 38, 84 Am. Dec. 728; *Thompson* v. *Libby,* 35 Minn. 443, 29 N. W. 150; *J. Thompson Mfg. Co.* v. *Gunderson,* 106 Wis. 449, 49 L. R. A. 862, 82 N. W. 299.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought to recover a judgment for damages for breach of a contract. On May 12, 1912, the defendant having theretofore secured a contract for the erection of a courthouse for Granite county, the plaintiff entered into a contract with it to manufacture and deliver to it at the courthouse site "400,000 brick or more," as required by the defendant, at an agreed price of $10.50 per thousand. The defendant was to notify the plaintiff of the approximate number required, "not later than the time for the burning of the last kiln." It was stipulated that the plaintiff should "commence delivering the brick not later than July 1 in sufficient quantities to keep the work going," but that a delay not to exceed a week later than that date, resulting from bad weather or other unavoidable cause stopping the work of brickmaking, the plaintiff using due diligence, should not be deemed a violation of the contract. On the 10th day of each month the plaintiff was to receive payment in full, at the stipulated price, for all brick delivered during the previous month. As a ground for recovery it is alleged, in substance, that the plaintiff between July 1 and September 15, 1912, manufactured 400,000 brick and delivered to the defendant according to the terms of the contract 313,622, for which he received the contract price per thousand; that he thereafter offered to deliver the balance of 86,378, in such numbers and at such times as the defendant might require, and demanded that the defendant inform the plaintiff as to the number required and the time of delivery; and that he was

informed by the agents of defendant that it would not accept
further delivery from him. It is further alleged that the plain-
tiff has duly performed all the conditions of the contract to be
performed by him; that he is ready and willing to deliver the
balance due, and that by defendant's refusal to accept delivery
thereof and pay the purchase price, he has been damaged in the
sum of $909. Defendant's answer, besides making denial of
some of the allegations of the complaint presenting issues which
it is not now necessary to notice, alleged the following counter-
claims as defenses: (1) That the plaintiff violated the contract
in failing to deliver brick during the month of July in quanti-
ties sufficient to keep the work going; that defendant was com-
pelled to purchase brick elsewhere to the number of 36,000, at
a cost of $3 per thousand higher than the contract price; and
that by reason of the premises the defendant was damaged in
the sum of $108. (2) That the plaintiff failed to deliver brick
sufficient to keep the work going, whereby the defendant was
compelled to lay off men and delay the work of erection for
more than twenty days, at a cost of $20 per day, thus suffering
damage in the sum of $400. And (3) that large numbers of the
brick furnished by the plaintiff were unsuitable for use and
unfit to be put into the walls of the building because they were
broken into pieces at the time of delivery; that because of their
broken condition the cost of laying the whole number delivered
by plaintiff was $1.50 per thousand over and above what the
cost would have been had plaintiff delivered them in' suitable
condition; and that defendant thereby suffered damage in the
sum of $470.43. Judgment is demanded for these several
amounts. Upon all of these defenses there was issue by reply.
The court made findings in favor of plaintiff on all the issues,
except those arising upon the first counterclaim. In this behalf
it found that the defendant was entitled to a credit of the
amount paid for the 36,000 brick at the price of $13.50 per
thousand, and that for the balance the plaintiff was entitled to
recover at the price stipulated in the contract, less $1.75 per
thousand, the cost of hauling from the kiln to the courthouse

site. It ordered judgment for the plaintiff for the balance thus ascertained, amounting to $332.80, together with costs of the action. The defendant has appealed from the judgment and the order denying its motion for a new trial.

That the findings and decision of the trial court upon the first counterclaim were correct is not now questioned. The only contention made is that the findings upon the issues relating to the second and third are not justified by the evidence. As to the second, the evidence discloses these facts: The plaintiff, having finished the burning of his first kiln containing 100,000 brick, began and continued deliveries until July 31, when delivery of the entire number of 100,000 was completed. The plaintiff was then engaged in burning a second kiln containing 200,000, having been delayed in completing it because of his inability to procure wood. On August 4, Mr. Hebb, the agent of defendant in charge of the construction work, was at the brickyards of plaintiff. Upon inquiry of plaintiff, he found that the burning would not be completed before August 12, and hence that the work of construction would be delayed until that time. Immediately thereafter he purchased 36,000 brick from a manufacturer in Missoula. There were then at the building site enough brick of those theretofore delivered by plaintiff to keep the work going for one more day. A part of those already delivered had been, by consent of defendant, diverted to a building in course of construction near by, by another contractor. Delivery of these was considered by defendant a delivery to it under the contract. It afterward paid for them. No complaint was made of the delay between August 4 and August 12, and as soon as the kiln was finished, and on August 12, plaintiff resumed and continued deliveries until the brickwork on the building was completed. Payments were punctually made by defendant as stipulated in the contract, without notice to plaintiff that he would be held accountable for his failure to deliver brick sufficient to keep the work going. As to these facts there is no controversy, except as to the extent of the delay. Mr. Hebb testified that the construction work was delayed, for want of

brick, from July 20 to August 12. While admitting that during July he diverted some brick to another building, he stated that the number was only 3,000. Plaintiff had fixed the number at 5,700. Mr. Suiter, another witness and an employee of defendant, said that the delay covered three or four weeks. Both stated, by way of conclusion, that the delay caused the defendant a daily loss of $20. There was no evidence showing, or tending to show, that the defendant was compelled to lay off any men as alleged in the answer, or to retain any in idleness for any number of days or at all. Nor did it appear that the defendant had to pay ·the county a penalty for delay in the completion of the building. Neither of these witnesses—who were the only ones who testified on the subject—undertook to contradict the statement of the plaintiff as to what the condition of the supply of brick was on August 4, when the purchase was made at Missoula; nor is there any evidence tending to show that the bricklayers were not kept busily employed in laying these brick during every day from August 4 to August 12, when plain-
[1–3] tiff resumed deliveries. In view of the admitted facts and the lack of definite statement by either witness justifying an inference that the defendant suffered damage, its claim for damages in a substantial amount was properly considered without foundation in the evidence. "No damages can be recovered for a breach of contract which are not clearly ascertainable, in both their nature and origin." (Rev. Codes, sec. 6049.) Without regard to the apparent variance between the allegations of the defendant and the evidence as to the particular manner in which it suffered damage, the foregoing evidence does not, under the rule of the statute, justify any recovery other than the nominal damages which the law presumes as a result of plaintiff's breach of the contract. (*Raiche* v. *Morrison,* 47 Mont. 127, 130 Pac. 1074.·) By a purchase of brick from Missoula in order to avoid a stopping of the work, which defendant was bound to do, if reasonably possible (*Ashley* v. *Rocky Mt. Bell Tel. Co.,* 25 Mont. 286, 64 Pac. 765), it forestalled the proba-

ble consequences of the breach and reduced the damages to a nominal amount.

We are inclined to the opinion that the damages alleged on this counterclaim should properly have been included as an [4] item for which recovery could be had, if at all, under the first counterclaim. From this point of view they were one of the natural consequences of the delay which would have resulted but for the purchase of the supply of brick at Missoula. Upon this theory defendant was not entitled to recover even nominal damages, for the reason that he split his cause of action. (*Murray* v. *City of Butte*, 35 Mont. 161, 88 Pac. 789.) But upon the assumption that the matters alleged constituted an independent breach of the contract, and that defendant was entitled to recover nominal damages on account of it, the court did not commit reversible error in failing to award them. A recovery would not have carried costs in any event. Such being the case, a new trial may not be granted merely for the purpose of allowing the defendants to recover a nominal sum. (*Wallace* v. *Weaver*, 47 Mont. 437, 133 Pac. 1099.)

As to the third counterclaim, it is contended that since, under the statute (Rev. Codes, sec. 5110), the plaintiff must be pre- [5] sumed to have sold the brick to defendant with a warranty that they were reasonably fit and suitable for use in the building, and it appears without dispute that a large percentage of the entire lot were broken, thereby obliging defendant to incur additional expense in order to carry forward the work of construction, the court erred in refusing to find and assess substantial damages to the defendant in this behalf. As counsel contend, it was not controverted by direct statement of any witness that many of the brick were broken—a much larger percentage than is usually the result of handling and hauling common brick, such as were the subject of the contract. Nor did any witness contradict the statements of the witnesses Hebb and Suiter that the cost of laying the entire number delivered was increased to the extent of $1.50 per thousand. It is not clear whether Mr. Hebb made complaint to the plaintiff as to

the condition of the brick. He testified that he protested to the teamsters who delivered the brick, at the manner in which they did the unloading from the wagons, and thought that at one time, when at plaintiff's brickyard, he had told plaintiff that the teamsters were delivering them in bad condition. The plaintiff denied emphatically that he had ever been spoken to on the subject by anyone, or had ever heard of any complaint. On the other hand, all brick delivered were promptly paid for as provided in the contract, without deduction or intimation that defendant would claim damages because of their condition. They were used in the construction of the building just as if they had been of suitable quality and in first-class condition. The rule is well established that, when one purchases articles under a warranty that they are reasonably suitable for the purpose for which they were purchased, he is not bound to rescind the contract and restore the articles upon discovering a breach of warranty, but may set up his claim for damages by way of counterclaim in an action by the plaintiff for the purchase price. (*Best Mfg. Co.* v. *Hutton,* 49 Mont. 78, 141 Pac. 653; *Hillman* v. *Luzon Café Co.,* 49 Mont. 180, 142 Pac. 641.) Nevertheless it is incumbent upon the claimant to establish both the breach and the resulting damages by a preponderance of the evidence. [6] The conduct of defendant's agents throughout the entire transaction was so entirely inconsistent with the claim now set up, that we think that the court was justified in rejecting the evidence adduced in support of it, and in finding that it was without foundation in fact. Evidently it concluded that witnesses whose testimony was pregnant with the admission that they had been guilty of using unfit material for the construction of a public building, thus defrauding the county, ought not to be regarded as trustworthy. We cannot say that it clearly abused its discretion in so doing.

The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.