PIONEER MINING CO., APPELLANT, *v.* BANNACK GOLD MINING CO., RESPONDENT.

(No. 4,384.)

(Submitted April 23, 1921.    Decided June 1, 1921.)

[198 Pac. 748.]

*Ejectment—Mines and Mining Claims—Easements — Waters and Water Rights—Flumes—Change of Location and Use— Appeal and Error—Nominal Damages.*

Mines and Mining Claims—Flumes—Implied Easements.
    1.    The owner of mining claims and mill sites conveyed a certain portion of them to plaintiff's predecessor, reserving in itself the lumber and material in a flume connecting with a quartz-mill on the portion not sold; also a right of way for a road thereto, the right to discharge mill tailings on the portion conveyed, *etc.*    The remainder of the property was sold to defendant's predecessor in interest.    *Held,*

---

1.    On application of rules to easements in water and watercourses, see notes in 26 L. R. A. (n. s.) 356; L. R. A. 1915C, 351.

that plaintiff acquired title with full knowledge of the reservations and that water conveyed through the flume was necessary to operate the mill, and that therefore, while the deed did not expressly reserve the right to so convey the water, he took title to the land burdened with an implied easement in defendant to use it for that purpose.

Easements—Presumptions.

2. As respects easements, the parties to a contract to sale of land are presumed to have contracted with reference to the conditions of the property at the time of sale, provided the marks are open and visible.

Implied Easements—Intent.

3. An implied easement rests upon implied intent gathered from the circumstances surrounding the conveyance.

Easements—When Apparent.

4. An easement is apparent when it may be discovered upon reasonable inspection.

Mines and Mining Claims—Flumes—Implied Easements.

5. An easement to conduct water to a quartz-mill necessarily implies the right to conduct it from the mill.

Same—Waters and Water Rights—Flumes—Change of Location and Use of Water.

6. Under section 4842, Revised Codes, the location of a flume maintained over the land of another, as well as the use of the water flowing through it, may be changed, provided the change adds no new burdens to the servient estate or causes additional damage thereto.

Real Property—Ouster—Intent.

7. An entry by one upon the land of another is an ouster of the legal possession arising from the title, or not, according to the intention with which it is done.

Ejectment—Right to Nominal Damages—Insufficient to Warrant Reversal of Judgment.

8. Where, in an action in ejectment, the property involved consisting of mining claims, the only meritorious claim for damages was based upon an encroachment of plaintiff's land by the erection of a toilet erected for temporary use, the injury complained of was too small to be a basis for the computation of damages, unless merely nominal, and therefore insufficient to warrant reversal of the judgment otherwise proper.

*Appeals from District Court, Beaverhead County; Joseph C. Smith, Judge.*

ACTION by the Pioneer Mining Company against the Bannack Gold Mining Company. From a judgment for defendant and from order denying a motion for a new trial, plaintiff appeals. Affirmed.

---

3. Grant of easement by implication, see notes in 23 **Am. Rep.** 446; 122 **Am. St. Rep.** 206; 67 **L. R. A.** 386.

*Mr. H. C. Hopkins,* for Appellant, submitted a brief, and argued the cause orally.

At the time appellant's title was conveyed from the ancestor, the ancestor owned all the realty of appellant and respondent, but not the mill or its machinery or appurtenances. At that time there was a flume connecting the end of the North Side Ditch (which end was not on appellant's ground) with the mill (which was not on appellant's ground). The flume extended entirely across appellant's land, and was not in use at the date of appellant's deed. The mill had been used but was not then being worked. There was no easement in the ancestor for the use of the flume over the property it conveyed to appellant, for no one can own an easement in his own lands. (Rev. Codes, sec. 4511; *Smith* v. *Denniff,* 24 Mont. 20, 81 Am. St. Rep. 408, 50 L. R. A. 741, 60 Pac. 398.)

The ancestor, in severing the large estate, conveyed to appellant's predecessors what may be termed the "servient" tenement or ground; it did not first convey the mill and the ground on which it stood. Had this been the case a different measure of law would apply; but here, the ancestor first conveyed land over which a third party had a flume, whether under a contract with the ancestor or by lease, or by mere license, or under agreement with the ancestor to remove same upon the happening of some contingency, we are left absolutely in the dark. The lumber and material in the flume was reserved to the third party, but the flume was destroyed by the purchaser after the purchase, and remained destroyed for some seventeen or eighteen years, when in April, 1916, the respondent attempts to revive or bring to life such right, without showing what it is. In order that respondent may claim this flume right, such right must have been appurtenant to the land at the time of the conveyance to respondent's predecessors, and the burden of showing such to have been the fact is upon the respondent. (*Custer Cons. Mines Co.* v. *City of Helena,* 52 Mont. 36, 156 Pac. 1090; *Smith* v. *Denniff, supra.*) Respondent has failed to prove this.

Section 4429, Revised Codes of Montana, states when things are to be deemed appurtenant; but it is the nature and use of the thing which makes it appurtenant or not. The proof shows the third party did, under some arrangement, make use of the flume from the end of the North Side Ditch to the mill, and of the waters of the North Side Ditch, but fails to show an easement in the third person, or in respondent or its predecessors. (*Babcock* v. *Gregg,* 55 Mont. 317, 178 Pac. 286.) Had the mill been annexed to the land on which it stood, and had it belonged to the ancestor, then, with the ownership of the North Side Ditch, the land and the mill in the same person, upon a severance and sale of the *quasi* "servient" tenement, the statutes would apply, and the sale to appellant's predecessors would undoubtedly have left the appellant's land impressed with an easement for the flume and tail-race as it existed. There would have been an implied reservation of an easement. But in this case the matter stands upon principle in a position very different from ordinary implied grants. Under the conditions as they existed, if the ancestor had intended to reserve any right from the tenement granted, it was his duty to reserve it expressly in the grant. (14 Cyc., p. 1171, and notes 20, 21; 3 Farnham on Waters, sec. 832; *Burr* v. *Mills,* 21 Wend. (N. Y.), 290; *Suffield* v. *Brown,* 33 L. J. Ch. (n. s.) 249; *Wheeldon* v. *Burrows,* L. R. 12 Ch. Div. 31; *De Rochemont* v. *Boston & M. R. R. Co.,* 64 N. H. 500, 15 Atl. 131; *Preble* v. *Reed,* 17 Me. 169; *White* v. *Chapin,* 97 Mass. 101; *Meredith* v. *Frank,* 56 Ohio St. 479, 47 N. E. 656, 9 R. C. L., sec. 28, p. 765, and note 18; Ann. Cas. 1913C, 1104, 1110.)

Even should the court determine that there was an implied reservation of an easement for the flume, and even for a tail-race, still the easement would be only that which existed at the date of the grant to appellant's predecessors May 28, 1897. It could be no different or greater than it then was. The extent of the user could not be increased by respondent. And from respondent's own uncontradicted evidence such a change, enlargement and misuser was made that the easement, if any, was

abandoned by the use made, and appellant was entitled to the premises. (Rev. Codes, secs. 4512, 4618; 9 R. C. L., pp. 700, 793; *McKinney* v. *Pennsylvania R. R. Co.,* 222 Pa. 48, 21 L. R. A. (n. s.) 1002, 70 Atl. 946; 15 Cyc. 25, 26, and note 19; *Babcock* v. *Gregg,* 55 Mont. 317, 178 Pac. 284.)

*Mr. E. B. Howell* and *Messrs. Lew. L. & E. J. Callaway,* for Respondent, submitted a brief; *Mr. Lew. L. Callaway* argued the cause orally.

The common predecessor of the parties clearly reserved to itself the right to work the ores from its veins of quartz through the Golden Leaf mill.

It clearly was the intention of the grantor to reserve to itself, and it did reserve by necessary implication, the right to work its mill. It was a mill run by water-power, and it must be assumed that it intended to continue to run it by the only sort of power it was possible to run it with—water; the only way to get the water from the North Side Ditch to the mill was by a flume. All doubts which may arise in the construction of the grant in so far as the reservations are concerned are to be resolved in favor of the grantor. "A reservation must be so construed as to give a practical right and not so as to render it worthless or unavailing. (18 C. J., Deeds, 363, note 34.) "A grant carries by implication as incidental thereto whatever is necessary to the reasonable enjoyment of the thing granted, and this applies to a reservation." (*Id.,* note 35.)

In *Bushnell* v. *Proprietors of Ore Bed,* 31 Conn. 150, 3 Morr. Min. Rep. 258, the plaintiff had conveyed to the defendants the right to discharge dirt from their ore washing upon his meadow lot. The tailings accumulated and spread so as to flow down upon the plaintiff's pasture lot just below the meadow lot. The court held that the damage was an incident to the grant and defendants were not liable; that the grantor is presumed to convey everything incidental to the enjoyment of the grant so far as may be in his power to yield. (*Forbush* v. *Lombard,* 13 Met. (Mass.) 109; *Marshal* v. *Niles,* 8 Conn. 369;

*St. Anthony Falls Water Power Co.* v. *Minneapolis,* 41 Minn. 270, 43 N. W. 56; *Fiske* v. *Brayman,* 21 R. I. 195, 42 Atl. 878; *Carroll's Lessee* v. *Granite Mfg. Co.,* 11 Md. 399; *Consolidated Ice Co.* v. *New York,* 65 N. Y. Supp. 912; 13 Cyc. 676; *Elsea* v. *Adkins,* 164 Ind. 580, 108 Am. St. Rep. 320, 74 N. E. 242; *Reynolds* v. *Union Sav. Bank,* 155 Iowa, 519, 49 L. R. A. (n. s.) 194, 136 N. W. 529.)

"An instrument creating a servitude need not mention accessory rights, since they pass as incidents to the contract." (14 Cyc. 1160, note 49; *Patout* v. *Lewis,* 51 La. Ann. 210, 25 South. 134.) Nor need it mention appurtenances. (*Ropps* v. *Barker,* 4 Pick. (Mass.) 239.) The right to maintain a drainage ditch may pass as an appurtenance. (*Fayter* v. *North,* 30 Utah, 156, 6 L. R. A. (n. s.) 410, 83 Pac. 742.)

The law is that if the dominant tenement is so altered as to change the nature of the easement the right is extinguished; but the alteration must be material and not of a trifling character only, and if the use is the same in substance though not in quality, the easement is not destroyed. Such is clearly the intendment of section 4512 of our Codes. The terms of the grant, and the nature of the enjoyment by which it was acquired, contemplate the very result which we have here; and for the same reason section 4618 gives the appellant no aid. Ruling Case Law is cited by appellant, but we find in that work under the head of easements, the following: "The cases recognized the doctrine that a material and injurious change may not be made, but that an immaterial change does not affect the easement." (19 R. C. L., "Easements," sec. 47, note 19.) "A slight and immaterial change, however, is not objectionable." (*Id.,* sec. 52, note 6; *Tallon* v. *Mayor of Hoboken,* 60 N. J. L. 212, 37 Atl. 895; *Wallis* v. *First Nat. Bank,* 155 Wis. 306, 143 N. W. 670; *McFarland* v. *Park Woolen Mills,* 113 Ga. 1072, 39 S. E. 405; *Burris* v. *People's Ditch Co.,* 104 Cal. 248, 37 Pac. 922; *Cram* v. *Chase,* 35 R. I. 98, 43 L. R. A. (n. s.) 824, 85 Atl. 642; *Parsons* v. *New York, N. H. & H. Ry. Co.,* 216 Mass. 269, 103 N. E. 693; *Greunson* v. *Healy,* 100 Pa. 42;

*Gillespie* v. *Weinberg*, 148 N. Y. 238, 42 N. E. 676; *Abbott* v.
*Butler*, 59 N. H. 317; *Shreve* v. *Mathis*, 63 N. J. Eq. 170, 52
Atl. 234.)

MR. CHIEF COMMISSIONER POORMAN prepared the
opinion for the court.

This is an action in ejectment. Verdict and judgment for
defendant. Plaintiff appeals from the judgment and from
an order overruling its motion for a new trial. The acts of
defendant complained of appear in the statement.

At the times mentioned in the complaint plaintiff was the
owner of certain mill sites and placer claims, or parts thereof,
described in the complaint, including the Junction mill site, the
French mill site, and the South Side placer. The defendant
owned certain lands northwest of and adjoining the lands of
plaintiff. At one time the Western Mine Enterprise Company
owned all of the lands involved herein, and in 1897 it conveyed
by deed to A. F. Graeter and others all or a part of the
Junction mill site, the French mill site, and the South Side
placer, with other lands. This deed contains the following
reservations: "Excepting the lumber and material in the water
flume connecting with the so-called Golden Leaf mill, and in
the ore-bins and mill tram thereon, said lumber and material
being the property of the Bannack Mining & Milling Company,
and excepting and reserving to the said party of the first part
the right of a roadway for wagons across the said premises
to connect with the Golden Leaf mill; the right to discharge
mill tailings upon the said premises from the operation of the
said mill, and excepting and reserving any and all veins or
lodes of quartz which may be found or which may be within
or upon the said premises and the right to work and explore
the same." The grantees named in this deed in 1898 con-
veyed their interest to plaintiff. In 1906 the Western Mine
Enterprise Company sold and conveyed all of its property
which it had not theretofore sold to Graeter and his associates
to Carlton H. Hand, who in turn sold it to the defendant

company.   The predecessor in interest of the Western Enterprise Company was the Golden Leaf Mining Company, the then owner of the Golden Leaf mill, which was operated by water-power conveyed to it through the North Side Ditch, and the flume, extending across a part of the lands conveyed to the plaintiff company.   At the time of the execution of the deed to Graeter and others, the Western Mine Enterprise Company owned the Golden Leaf mill and the land on which the same was situated, but did not own the mill machinery. That was owned by a subsidiary company known as the Bannack Mining & Milling Company, which was the operating company of the mill.   The rights of this latter company subsequently passed to the defendant herein.

The defendant maintains that at the time of the sale to Graeter the flume and mill were in a workable condition, the witness stating: ''We had been using the mill and conveying the water from the North Side Ditch down to the mill.   At the exact time of the conveyance to Graeter * * * they would be in such a condition that a few dollars would have put them into operating condition.   It would be just the ordinary work that would have to be done on a flume if you were to shut down in the fall, say, and start work in the spring.'' This condition of the mill and flume is disputed by the plaintiff.

The defendant further maintains that the plaintiff, in dredging its ground, destroyed the flume and so changed the surface of the ground that it was impossible to ascertain the exact location of the original flume.   Plaintiff also disputes this fact, and maintains that there was no flume there except in certain places.

Subsequently the Bannack Mining & Milling Company rebuilt the flume and, as maintained by defendant, on the same line of the original flume, as nearly as could be then ascertained.   The flume so built was of practically the same size as the original flume.   The plaintiff, however, claims that the new flume was in a new location and was larger than the old flume.

262   Pioneer Min. Co. *v.* Bannack Gold Min. Co.   [Mar. T. '21.

[60 Mont. 254.]

Some time prior to the trial, the plaintiff caused its ground to be surveyed, and according to that survey, as appears from the evidence, the building designated as a retort building projected on to plaintiff's land a distance of 3.35 feet in width and twenty-four feet in length. There was also a structure designated as a penstock, or standpipe, which extended across the line on to plaintiff's ground a distance of five feet, also a pump-house seven feet three inches by nine feet, a toilet building seven feet three inches square, a tail-race 93.5 feet long, twelve feet wide, and ten feet deep, but according to the survey made by the defendant, which was also in evidence, the retort building was not on the plaintiff's land, and the building known as the pump-house was entirely abandoned and removed by the defendant before the commencement of the action; that it was only a small house; that the pump was used to pump water in mixing cement for the foundation of the mill; that the toilet was a mere temporary structure set upon the gravel, without a pit or foundation. The flume referred to in the plaintiff's evidence was also upon the plaintiff's ground. It was also maintained by defendant that this flume, tail-race, and standpipe are necessary to the operation of the mill. All these matters, in so far as there was a conflict of evidence, were determined by the verdict of the jury. The only question then remaining here is the question of law relating to the right of the defendant to maintain the flume and the tail-race. The standpipe or penstock, according to the testimony in this case, was a necessary part of the flume, being required to enable the defendant to utilize the water with which to operate the mill.

At the time plaintiff acquired title to this land, it was [1] charged with the knowledge of the existence of this mill and of the fact that same was operated by water-power conveyed to it through the North Side Ditch and the flume, for the ditch and the flume extended across the land conveyed to plaintiff, and the deed to the plaintiff's immediate grantor refers to the "water flume connecting with the Golden Leaf

mill," reserving the material thereon, with the statement that the same belonged to the Bannack Mining & Milling Company. The deed also reserves a right to a roadway for wagons to the "Golden Leaf mill," also "the right to discharge tailings upon the said premises from the operations of said mill." The Western Mine Enterprise Company was at the time of the conveyance to plaintiff's immediate grantors the owner of the mill, which was operated only by this water-power. While the deed did not expressly reserve the right to convey water across the land conveyed to the plaintiff's grantors, or to erect and maintain a flume thereon, yet there is the clear implication that the company did not intend to abandon its mill or the operation thereof, else why would it reserve the right to discharge mill tailings upon the premises conveyed "from the operation of the said mill"?

It is true, as maintained by appellant, that no easement exists so long as there is a unity of ownership, because the owner of the whole may at any time rearrange the qualities of the several parts, but the moment a severance occurs, by the sale of a part, the right of the owner to redistribute the properties of the respective portions ceases; and easements or [2] servitudes may thus be created or reserved. The parties are presumed to contract with reference to the condition of the property at the time of the sale, provided the marks are open and visible. (*Lampman* v. *Milks,* 21 N. Y. 505; *Martin* v. *Murphy,* 221 Ill. 632, 77 N. E. 1126; *Oland* v. *Mackintosh,* 45 Nova Scotia, 13; 19 C. J. 920.)

It is also quite generally held that, where there is a grant of land, with full covenants of warranty, without express reservations of easements, there can be no easement by implication, unless the easement is strictly one of necessity. (19 C. J. 920.)

"In a sense no easement or *quasi* easement can well be absolutely necessary to any possible enjoyment of property. The most that can be required is that it be, in addition to being apparent and continuous, essential to use and enjoyment of the premises as permanently improved at the time of the con-

veyance of the servient estate. And this appears to be what is meant by the term 'strict necessity,' in defining easement reserved by implication." (19 C. J. 920, note 75, Div. A.)

"The term 'necessity' is to be understood as meaning that there could be no other reasonable mode of enjoying the dominant tenement without the easement." (*Starrett* v. *Baudler*, 181 Iowa, 965, 980, L. R. A. 1918B, 528, 165 N. W. 216; 19 C. J., *supra.*)

"The word 'necessary' is not to be limited to absolute physical necessity; and a way over land of the grantor in a deed may pass as appurtenant to the land granted, although there are no insuperable physical obstacles to prevent access by another way, if such other way cannot be made without unreasonable labor and expense; and in determining this question, a jury may consider the comparative value of the land and the probable cost of such a way." (*Pettingill* v. *Porter*, 8 Allen (90 Mass.), 1, 85 Am. Dec. 671; *Carbrey* v. *Willis*, 7 Allen (Mass.), 364, 83 Am. Dec. 68, 694.)

Implied easements rest upon implied intent gathered from [3] the circumstances surrounding the conveyance. (*Wells* v. *Garbutt*, 132 N. Y. 430, 437, 30 N. E. 978.)

An easement is apparent when it may be discovered upon [4] reasonable inspection. (*Lampman* v. *Milks, supra.*)

The Massachusetts court construes the law there strictly against implied easements, and it may be true, as stated by the New York court in *Taylor* v. *Millard*, 118 N. Y. 244, 6 L. R. A. 667, 23 N. E. 376, also Tiffany on Real Property, 2d ed. 1920, section 380, that it is good policy to discourage easements by implication, but this doctrine cannot be carried to the extent of depriving a party of his rights clearly established by the evidence in the particular case. It is also apparent, and as held by the authorities above cited, that a distinction is to be made between the easement reserved for the benefit of the estate granted and for the benefit of a separate estate. A quite thorough discussion of this subject may be found in

*Elliott* v. *Rhett*, 5 Rich. (S. C.) 405, 57 Am. Dec. 750, and
note thereto; also 29 C. J. 920, 921.

The right to conduct water to the mill necessarily implies
[5]   the right to conduct it from the mill, and the statute in
certain cases requires this to be done.   (Sec. 4844, Rev. Codes.)

"Sluice-boxes, flumes, hose, pipes, railway tracks, cars, black-
smith-shops, mills, and all other machinery or tools used in
working or developing a mine, are to be deemed affixed to the
mine."   (Sec. 4428, Rev. Codes.)

"A thing is deemed to be incidental or appurtenant to land
when it is by right used with the land for its benefit, as in the
case of a way, or watercourse, or of a passage for light, air, or
heat from or across the land of another."   (Sec. 4429, Rev.
Codes.)

From the evidence in this case, this ditch and flume, penstock
and tail-race were necessary appurtenances to this mill, and as
such they were reserved by the Western Mine Enterprise Com-
pany.

Plaintiff also claims that the location of this flume was
[6]   changed, and that the use to which the water was put was
also changed, but the right to do this is granted by statute.
(Sec. 4842, Rev. Codes.)   And there is not any evidence here
to show that the change, if any, in the location of the flume
or the tail-race, or the mode of operation of the mill, added
any burden to the servient estate, or caused any additional
damage thereto.

Plaintiff also takes exception to the introduction of some evi-
dence and the instructions of the court, but all of these were
addressed either to showing the good faith of the defendant in
its operations of this mill and the construction of the flume
and the buildings, or to the theory adopted by the court that
the flume, if necessary to the operation of the mill, was an
appurtenance thereto.

"An entry upon the land of another under assertion of
[7]   title is an ouster (*West* v. *Lanier*, 28 Tenn. (Humph.)
9.)   In *Ewing* v. *Burnet*, 11 Pet. 52, 36 U. S. 328, 9 L. Ed. 628,

it is said: 'An entry by one man upon the land of another is an ouster of the legal possession arising from the title, or not, according to the intention with which it is done. In legal language, the intention guides the entry, and fixes its character.' '' (*Bramlett* v. *Flick,* 23 Mont. 95, 105, 57 Pac. 869, 872.)

The jury having found that the retort building did not encroach upon the territory of the plaintiff, and the penstock being a part of the flume, which the defendant had a right to maintain, and the pump-house, if it ever was an unlawful invasion of plaintiff's rights, having been removed prior to the commencement of this action, and the defendant having the right to maintain the tail-race, the evidence relating to damages becomes immaterial, for:

The only question remaining would be that with reference to [8] the toilet building, and that, according to the evidence, was only for temporary use, and the injury resulting therefrom, if any at all, is clearly too small to be a basis for the computation of any damages, unless *merely* nominal, and that is not sufficient to warrant reversal. (*Wallace* v. *Weaver,* 47 Mont. 437, 446, 133 Pac. 1099; 4 C. J. 1179; 3 Cyc. 447; 20 R. C. L., sec. 67, p. 285.) The right of the plaintiff to the land is fully protected by the judgment.

We recommend that the judgment and order appealed from be affirmed.

Per Curiam : For the reasons given in the foregoing opinion, the judgment and order appealed from are affirmed.

*Affirmed.*